IN THE OREGON TAX COURT
REGULAR DIVISION

Carol R. KNAPP,
Dee West, Gary West,
Frank Crum, Georgeann Crum,
Fred Miller, Marie Miller,
Don Parker, Linda K. Bush, Carolyn Endeman,
Paul Hayes, and Alvin K. Reiss,
*Plaintiffs,*

*v.*

The CITY OF JACKSONVILLE, OREGON,
*Defendant.*

(TC 4641)

Karen M. Williams, Lane Powell Spears Lubersky LLP, Portland, argued the cause for Plaintiffs (taxpayers).

Kurt H. Knudsen, Ashland, argued the cause for Defendant (the city).

Marilyn J. Harbur, Assistant Attorney General, Department of Justice, Salem, filed briefs as *amicus curiae* and argued the cause for the Department of Revenue.

Decision rendered September 28, 2004. *See Knapp II v. City of Jacksonville*, 18 OTR 236 (2005).

### HENRY C. BREITHAUPT, Judge.

## I. INTRODUCTION

The City of Jacksonville (the city) adopted a public safety surcharge (the surcharge). The city collected amounts from Plaintiffs (taxpayers) under the surcharge and then amended the ordinance imposing the surcharge (the ordinance as amended will be referred to as "the amended surcharge" and the two actions will be referred to collectively as "the surcharges"). The city has also collected amounts from taxpayers under the amended surcharge.

Taxpayers filed this action challenging the validity of the surcharges under Article XI, section 11 and section 11b, of the Oregon Constitution and asserting that the surcharges violate Article I, sections 20 and 32, of the Oregon Constitution, as well as the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[1]

The parties have submitted a stipulation of facts and cross-motions for summary judgment. The Department of Revenue (the department) has filed briefs as an *amicus curiae*.

## II. FACTS

The surcharges were implemented by ordinance.[2] The surcharges were not voted upon by the citizens of the city. As neither the surcharge nor the amended surcharge was classified as subject to Article XI, section 11 or section 11b, of the Oregon Constitution, the city did not give notice of its adoption of the surcharges under ORS 305.583(8).[3]

In its categorization of taxes for fiscal year 2003-04, the city did not include its anticipated receipts under the surcharges as tax receipts subject to Article XI, section 11 or

---

[1] Initially taxpayers appeared to argue that the city had exceeded its home rule authority by imposing the surcharges. Taxpayers have conceded that their basic argument, stated more accurately, is that the surcharges exceeded the constitutional limitations imposed by Measures 5 and 50.

[2] The surcharge was adopted as the Public Safety Act on April 1, 2003. The amendments producing the amended surcharge were adopted October 7, 2003.

[3] The events relevant to this action and its filing occurred during 2003, prior to the effective date of the Oregon Revised Statutes (ORS) 2003. However, because the department referenced its arguments to the 2003 edition without objection from any party, and because the relevant subsections did not change substantively from the 2001 edition, for ease of reference the court will use the 2003 edition.

section 11b, of the Oregon Constitution. Without regard to the receipts from the surcharges, the city has levied taxes at its full permanent rate allowance as established by law.

Particular facts about the operation of each of the surcharges will be discussed below.

## III. ISSUES

Do either of the surcharges exceed the constitutional limitations set forth above?

## IV. ANALYSIS

The following discussion is organized according to claims made against the surcharge and those made against the amended surcharge.

A. *Measure 5 Limitations*

1. *The Surcharge*

Article XI, section 11b, of the Oregon Constitution (referred to as Measure 5, as that was the designation of the initiative originally placing it in the constitution) provides a set of limitations on the amount of tax that can be imposed on property. For the purposes of Measure 5, a tax is "any charge imposed by a governmental unit upon property or upon a property owner as a direct consequence of ownership of that property * * *." Or Const, Art XI, § 11b(2)(b). Measure 5 specifically provides that its limits apply "whether the taxes imposed on property are calculated on the basis of the value of that property or on some other basis * * *." Or Const, Art XI, § 11b(1).

As to Measure 5, the parties have focused their arguments on whether the surcharge was imposed "upon property" or imposed "upon a property owner as a direct consequence of ownership of that property." *Id.* § 11b(2)(b). In deciding that question, the court is guided by the decision in *Roseburg School District v. City of Roseburg*, 316 Or 374, 851 P2d 595 (1993).

In *Roseburg* the municipality enacted a storm drainage fee, which, the court noted, had the following characteristics:

1. The obligation to pay the fee arose when a person responsible used the storm drainage service.

2. The improvement of any premises led to a presumption that the storm drainage service was being used.

3. The person paying the municipality's water utility charges was responsible for the storm drainage fee unless another person assumed that obligation in writing.

4. If no water service to a property existed, the storm drainage fee was the obligation of the person having the right to occupy the property.

5. No provision was made for attaching a lien against property for nonpayment of the fee. Further, if a responsible person defaulted in payment and quit the premises, water service would not be withheld from a new occupant or the owner.

6. A person otherwise responsible for payment of the fee could seek reduction of the fee if the service was not used.

The *Roseburg* court considered the above points and concluded the fees were not imposed upon real property. *Id.* at 380. In support of that conclusion, the court noted there was no provision for a lien against the property in the case of nonpayment. *Id.* at 381. The court further concluded that the owner of the property was not responsible for the fee as a direct consequence of such ownership. *Id.* The court noted that although an owner could or might be responsible, if someone else had liability for water service or a right to occupy, the liability was a function of those characteristics and not a result of ownership of the property. *Id.*

In the case at hand, the surcharge had the following features:

1. The ordinance adopting the surcharge stated that the surcharge was not intended to be a tax and the surcharge was not subject to Measure 5.

2. The surcharge was "assessed to each residential unit and to each non-residential unit on the basis of Fifteen Dollars ($15.00) per unit per month." Billing was as a line

item on the city's utility bill, except as otherwise provided. JACKSONVILLE, OR, PUBLIC SAFETY ACT § 3.01.040(2) (2003).

3. A residential unit was defined in section 3.01.030(1) as:

> "A residential structure which provides complete living facilities for one or more persons including, but not limited to, permanent provisions for living, sleeping, and sanitation. A home business in a residential zone will be regarded only as a residential unit, not as a non-residential unit. An Ancillary Unit on a single-family parcel shall be considered as a separate residential unit. Multifamily residential property consisting of two or more dwelling units, condominium units or individual mobile home units shall have each unit considered as a separate residential unit. Transient Lodging shall not be considered as a residential unit."

4. A nonresidential unit was defined in section 3.01.030(1) as:

> "A use of property which is primarily not for personal, domestic accommodation, such as a business or commercial enterprise. A non-residential structure which provides facilities for one or more businesses including, but not limited to, permanent provisions for access to the public, shall have each distinct business facility considered as a separate non-residential unit."

5. The obligation to pay the surcharge "arises when a person responsible uses or otherwise benefits from Public Safety services," which was presumed to occur whenever a property was developed property. *Id.* § 3.01.040(3).

6. Unless another person assumed the obligation in writing, the person responsible for paying the city's water and sewer charges was responsible for paying the surcharge. The owner of record of the property was primarily responsible for payment and was responsible if a tenant on the property did not pay the surcharge. *Id.* § 3.01.060(2).

7. In the event of a three-month delinquency in payment of the surcharge, the surcharge was "imposed on the owner of the property and the unpaid charges may be imposed as a lien on the owner's property * * *." *Id.* § 3.01.060(8).

8. Provision was made for claims of financial hardship by the owner of property that could lead to relief from all or a portion of the surcharge. *Id.* § 3.01.080.

9. If payments on the city's utility billings were inadequate to cover all matters billed, payments were first applied to the surcharge and thereafter to sewer and water charges, respectively. *Id.* § 3.01.090(1).

10. The city could enforce the surcharge payment obligation by withholding delivery of water to premises where the surcharge was delinquent. *Id.* § 3.01.090(2).

■ Under *Roseburg*, the features of the surcharge are such that it is a tax because it is imposed upon property or upon a property owner as a direct consequence of ownership of that property.[4] 316 Or at 379. As to the question of imposition upon property, unlike the situation in *Roseburg* where no lien was imposed against the property in the event of non-payment, here a lien would be imposed. By the terms of the ordinance, it is imposed upon property of the owner. PUBLIC SAFETY ACT § 3.01.060(8). That language suggests the lien may extend to all property of the owner, but it clearly extends to *the* property, the development of which attracted the surcharge. The lien mechanism strongly suggests the surcharge is a tax upon the property.

However, the court need not rest its decision upon that prong of the constitutional definition because the surcharge is, in any event, a tax upon the owner of the property by reason of ownership. The surcharge is stated to be an obligation that is primarily that of the owner. *Id.* § 3.01.060(2). In the event of a three-month delinquency in payment of the surcharges, it is imposed *upon* the owner. *Id.* § 3.01.060(8). Finally, only the owner may apply for relief from the surcharge by reason of hardship. *Id.* § 3.01.080. Those features conclusively show that the surcharge is a charge imposed upon an owner of property as a direct consequence of ownership of that property.

---

[4] The statements in the ordinance to the effect that the surcharge is not a tax and not subject to Measure 5 are not binding upon the court.

The parties agreed that if the surcharge was found to be a tax subject to Measure 5, further proceedings would be needed to determine whether the limitations of Measure 5 had been exceeded. Therefore, this case will be continued with regard to that issue.

## 2. *The Amended Surcharge*

Perhaps anticipating the problems under Measure 5 definitions discussed above, the amended surcharge was adopted. The amendments creating the amended surcharge and relevant to a discussion of Measure 5 are as follows:

1. The provision stating that the property owner was primarily responsible for payment was deleted, thus responsibility for payment now remains with the person responsible for paying the city's water and sewer utility charges. JACKSONVILLE, OR, PUBLIC SAFETY ACT (AMENDED) § 3.01.060(2) (2003).

2. In cases when no sewer or water service exists, the amendments made the amended surcharge the liability of the person having the right to occupy property. Under the amended surcharge, the owner is no longer the person with default liability. *Id.* § 3.01.060(3).

3. The amended surcharge eliminated owner liability and lien provisions in the event of extended delinquency. *Id.* § 3.01.060(8).

4. Financial hardship relief and other appeal rights became claims of the responsible party, not the owner. *Id.* § 3.01.080.

The above amendments removed the features that the court considered determinative in concluding that the surcharge was a charge imposed upon the owner of the property as a direct consequence of ownership. The question thus becomes whether the features of the amended surcharge and those retained in the provisions of the surcharge itself support a finding that the amended surcharge fits the constitutional definition of a tax.

Taxpayers and the department argue that, even as amended, the imposition in question is a tax under Measure 5 because it is a tax upon property. Taxpayers also appear to

argue that, even as amended, the imposition is a tax upon an owner by reason of ownership.

The department's argument focuses on the language in the surcharges that states that the fee is "assessed to each residential unit and to each non-residential unit on the basis of Fifteen Dollars ($15.00) per unit per month." PUBLIC SAFETY ACT § 3.01.040. The department argues that if the fee is "assessed to" a unit, it is imposed upon each unit of real property. The department points to the provisions of ORS 310.140(18), which provide:

> "* * * As used in this subsection, *'property' means real or tangible personal property*, and intangible property that is part of *a unit of real or tangible personal property* to the extent that such intangible property is subject to a tax on property."

(Emphasis added by the department in its brief.) The department appears to argue that the reference in the ordinance to a "unit" must be construed within a context that includes ORS 310.140(18) because the statutory definition equates "units" with "units of real property."

■ The department's argument must be rejected for two reasons. First, the statutory reference to a "unit" in ORS 310.140(18) is not made in the context of the word's definition; rather, the reference is made within a definition of "property." Property, as defined in the statute, is real or tangible personal property. ORS 310.140(18). The definition can include intangible personal property, but only where such property is "part of a unit of real or tangible personal property to the extent that such intangible property is subject to a tax on property." *Id.* In the court's opinion, that language has the limited purpose of specifying that in some cases the definition of "property subject to a tax" may include intangible personal property. *Id.* There is one such case contemplated by the statutes. That is when centrally assessed property includes intangible property and such intangible property is, by statute, subject to taxation. *See* ORS 307.030(2). *See also* ORS 308.510(1). Where central assessment occurs, the concept of a unit of property is used. ORS 308.555. The court concludes that ORS 310.140(18), insofar as it refers to a unit,

refers to situations involving centrally assessed property and is not helpful in construing the ordinance in question here.

Second, the ordinance itself indicates that a unit is a reference to an actual structure or a portion of a structure. Thus, a "residential unit" is defined as:

> "A residential structure which provides complete living facilities * * *. Multi-Family residential property consisting of two or more dwelling units * * * shall have each unit considered as a separate residential unit * * *."

PUBLIC SAFETY ACT § 3.01.030(1). Although that definition presents the problem of defining a unit by use of the same term, it seems clear to the court that under the ordinance a unit is a structure or, where multiple dwelling locations exist, portions of a structure. Similarly, the definition of a "non-residential unit" in the ordinance refers to actual structures or discrete portions of structures. *See id.*

Although the amended surcharge speaks of the fee being assessed to a unit, in context it is clear that the tax is not imposed on a property or portion thereof. The unit is the measurement of the tax, but the amended surcharge does not create an *in rem* obligation in respect of the property. The obligation is instead a personal obligation of the responsible person. The presence of a lien, a distinguishing feature of an *in rem* obligation created by a tax imposed on property, is not found in the amended surcharge.

Taxpayers argue that under the ordinance a lien on property can be created. Under the surcharge provisions, the surcharge, sewer, and water charges are billed together. *Id.* at 3.01.040(2). If a payment is received that is not adequate to cover all such charges, the payment is credited first to the surcharge, then to the sewer charges, and finally to the water charges. *Id.* § 3.01.090(1). Taxpayers assert that if a payment of only the amount of the surcharge is made, the deficiency as to sewer charges could result in a lien on the property served. That is because the ordinance on water and sewer services provides:

> "(C) *Nonpayment of sewer service charges.* If said sewer service charges are not paid when due by any such person, firm or corporation whose premises are served or who are

subject to the charges herein provided, water service provided to that customer by the city Water Department may be discontinued because of the default in the payment of the sewer service charges. As an additional alternative [*sic*] method, if such rates and charges are not paid when due by any such person, firm or corporation, the amounts so unpaid may be certified by the City Recorder to the county assessor of Jackson County, Oregon, and shall be by them assessed against the premises served *as provided by law,* and shall be collected and paid over to the city in the same manner as other taxes are assessed, collected and paid. Such unpaid charges may also be recovered in an action at law in the name of the city, with interest as aforesaid."

JACKSONVILLE, OR, WATER SERVICE REGULATIONS § 13.04.140 (1993) (emphasis added).

It is important to note that the assessment of unpaid sewer charges against the property can only occur "as provided by law." *Id.* Neither party has addressed what law provides for such certification and assessment, but the court concludes that the law in question is ORS 454.225. That statute is one of a series that deal with municipal sewer systems. ORS 454.225 itself provides, in relevant part:

"The governing body of the municipality may establish just and equitable rates or charges to be paid for the use of the disposal system by each person, firm or corporation whose premises are served thereby, or upon subsequent service thereto. If the service charges so established are not paid when due, the amounts thereof, together with such penalties, interests and costs as may be provided by the governing body of the municipality may be recovered in an action at law, *or if the municipality does not have the ability to collect sewerage disposal charges in connection with or as part of the charge for another service or utility that can be curtailed to secure collection,* the charge may be certified and presented after July 15 and on or before the following July 15 to the tax assessor of the county in which the municipality is situated and be by the assessor assessed against the premises serviced on the next assessment and tax roll prepared after July 15."

(Emphasis added.) Under its ordinances, the city has the ability and does collect sewer charges as part of the water charge; it can curtail the water service to secure collection of

sewer charges. Therefore, under ORS 454.225, the city does not have the authority to certify the charge to the assessor for collection. Accordingly, the taxpayers' argument in that regard does not succeed.[5]

Taxpayers also argue that the amended surcharge is a tax imposed upon an owner of real property as a direct consequence of that ownership. They assert that, notwithstanding the ordinance language making the amended surcharge an obligation of the one who *occupies* the property, because a lease is a form of property interest and the amended surcharge is the responsibility of the lessee, the fee is in essence assessed upon the property, and therefore upon the owner of the property.

The problem with taxpayers' analysis on that point is that when the constitution was amended to add the concepts of a tax upon property and a tax upon an owner of property, that amendment was part of a set of provisions superimposed onto the existing property tax regime in the state. Nothing in the provisions themselves suggests that they effected a change in what types of property or interests in property were subject to taxation in Oregon. Nor have taxpayers identified any other basis upon which the provisions could be so interpreted. That being the case, the court must read the word "property" in the operative phrase as a reference to property that is taxable.

As to what property or interests in property are taxable, the law in Oregon has been clear for many years. Property taxes are imposed upon the fee interest without regard to lesser interests, except in very limited circumstances. *Swan Lake Mldg. Co. v. Dept. of Rev.*, 257 Or 622, 625, 478 P2d 393 (1971) (holding that owner is taxed upon all interests in the land, including leasehold). Interests less than fee that are held in land owned by federal or other governments are

---

[5] The court does not address what, if any, difference in analysis would result if the city did have lien rights in respect of sewer charges. At trial and in briefing the city asserted that it would not assess a subsequent owner for uncollected amounts due from a previous owner, nor withhold water service to a subsequent owner. Taxpayers did not introduce evidence to the contrary. See *Roseburg* for that court's acceptance of the City of Roseburg's representation at oral argument that property owners would not be penalized for previous occupant's nonpayment of water bill. 316 Or at 381 n 13 (1993).

special cases and have received considerable attention. But, in general, there is no separate taxation of interests that are less than fee interests.

■ ORS 307.010(1) provides:

"As used in the property tax laws of this state:

"(a) 'Land' means land in its natural state. For purposes of assessment of property subject to assessment at assessed value under ORS 308.146, land includes any site development made to the land. As used in this paragraph, 'site development' includes fill, grading, leveling, underground utilities, underground utility connections and any other elements identified by rule of the Department of Revenue.

"(b) 'Real property' includes:

"(A) The land itself, above or under water;

"(B) All buildings, structures, improvements, machinery, equipment or fixtures erected upon, above or affixed to the land;

"(C) All mines, minerals, quarries and trees in, under or upon the land;

"(D) All water rights and water powers and all other rights and privileges in any way appertaining to the land; or

"(E) Any estate, right, title or interest whatever in the land or real property, less than the fee simple."

Taxpayers argue that the above language means that interests less than fee simple are separately taxed. That is not the meaning of the statute. To the contrary, the definition indicates that the fee interest in real property subject to taxation is considered to include all such lesser interests.[6] It does not indicate each separate subordinate interest is subject to taxation. Only in certain specifically treated cases are subordinate interests in property treated differently. *See* ORS 308.115 (tax treatment of improvements and severable mineral or other interests owned separately). *See also* ORS

---

[6] Such lesser or "horizontal" interests in property are not separately taxable, but "vertical" or undivided interests may be assessed and taxed. *See* ORS 308.125.

307.060 and ORS 307.110 (tax treatment of property of government held by nongovernment person under lease or other interest less than fee). Indeed, if taxpayers' argument on the taxability of interests less than fee were correct, the provisions of ORS 307.060 and ORS 307.110 would be unnecessary because the separate tax status of such interests would render them taxable when owned by private parties.

■ The limitations of Measures 5 and 50 apply to the basic property tax concepts that existed prior to the adoption of those measures. Under those basic concepts, leasehold or other interests less than fee in property are not separately taxable, except in cases not relevant here. Accordingly, the protective provisions of Measures 5 and 50 do not apply to such interests and one possessing such an interest is not an owner of property for purposes of Measure 5.

The court concludes, therefore, that the amended surcharge is neither a tax imposed upon property nor a tax imposed upon an owner of property by reason of that ownership. The amended surcharge is not to be included in any future Measure 5 analysis.

B. *Measure 50 Limitations*

■ By their terms, Measure 50 limitations apply only to ad valorem property taxes. *See generally* Or Const, Art XI, § 11. Such ad valorem taxes may not exceed the permanent rate for a taxing body established by the legislature pursuant to the provisions of Measure 50. The surcharge and amended surcharge are measured by the number of residential or nonresidential units and not by the value of property. Hence, neither the surcharge nor the amended surcharge are subject to the provisions of Measure 50.[7]

Taxpayers object that the city carefully tailored its surcharge to escape the limitations of Measure 50. That may be true. However, the constitution does not proscribe such

---

[7] Indeed, the limits that taxpayers seek to apply under Measure 50 relate to the permanent rate. However, the permanent rate of Measure 50 is a narrower concept than that employed under Measure 5. Measure 50 only refers to ad valorem taxes, whereas Measure 5 specifically requires all taxes—ad valorem and other—to be accounted for in applying its limitations.

actions, except for governmental attempts to avoid the reductions attributable to the initial implementation of Measure 50, which was to be limited by the legislature. *Id.* at § 11(1)(a). The legislature provided such limitation only for the tax year 1997-98. Or Laws 1997, ch 541, § 456(9). Taxpayers do not challenge the constitutionality of that provision. The constitutional avoidance provisions of Measure 50, therefore, do not apply to the city's surcharge or amended surcharge.

## C. *Other State and Federal Constitutional Limitations*

Taxpayers assert that the surcharges violate Article I, sections 20 and 32, of the Oregon Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (collectively "the uniformity provisions"). The department has suggested that this court may not have jurisdiction to decide such questions. To that fundamental question the court now turns.

### 1. *Jurisdiction of the Tax Court*

The court's general jurisdiction is set out in ORS 305.410(1), which states that the court may determine all questions of law and fact "arising under the tax laws of this state." The surcharges are not tax laws of this state; rather, they are ordinances validly enacted by the City of Jacksonville under its home rule powers. *See Jarvill v. City of Eugene*, 289 Or 157, 613 P2d 1 (1980) (holding that tax law must be enacted by *state* government authority to be a state tax).

However, the court has specific jurisdictional grants under other statutes. Under ORS 305.580 to 305.591 the court has jurisdiction to resolve the question of whether the surcharges are subject to Measure 5 or Measure 50 and whether the surcharges exceed the limitations of those provisions. The question that remains is: does the court have jurisdiction to address whether the surcharges violate the uniformity provisions found outside Measures 5 and 50?

The principles for deciding that question have been articulated in a series of decisions of the Oregon Supreme Court. First, although the imposition here is a city "tax," this court has jurisdiction if that jurisdiction is "separately and

specifically provided outside of ORS 305.410(1)." *Id.* at 167-68. Second, the Oregon Supreme Court has concluded that, in matters of taxation, the legislature intended to avoid split jurisdiction. *Id.* at 167. *See also Sanok v. Grimes*, 294 Or 684, 662 P2d 693 (1983). Third, in order to avoid split jurisdiction, the Oregon Supreme Court has observed that a claim outside the stated jurisdiction of this court might be adjudicated together with a claim subject to the jurisdiction of this court. *Gugler v. Baker Co. Educ. Serv. Dist. (Gugler I)*, 305 Or 548, 555-56, 754 P2d 891 (1988); *Gugler v. Baker Co. Educ. Serv. Dist. (Gugler II)*, 305 Or 563, 568, 754 P2d 900 (1988).

 The *Gugler* cases indicate that the Tax Court has jurisdiction to consider nontax questions, including constitutional issues, when another matter is within the jurisdiction of the court and the "pendant" claim arises out of the same facts as the matter that is properly before the Tax Court. *Gugler II*, 305 Or at 568. That latitude is limited, however, when a decision on the point would have substantial nontax consequences, making jurisdiction of the Tax Court inappropriate. *Sanok*, 294 Or at 697.

In the case at hand, the constitutional challenges under the uniformity provisions arise out of the same set of facts as do the challenges brought under ORS 305.580 to 305.591, under which this court's jurisdiction is separately and specifically provided. The uniformity challenges, like those brought under ORS 305.580 to 305.591, are to each ordinance on its face and not to the application of the ordinances under particular fact situations. Second, there appear to be no significant nontax consequences involved in a consideration by this court of the uniformity issues. Indeed, one of the uniformity claims is brought under Article I, section 32, of the Oregon Constitution, which is specifically addressed to tax matters. The court concludes it has jurisdiction to consider the uniformity question.

2. *Claims Under Article I, Section 32, of the Oregon Constitution*

Taxpayers assert that two features of the surcharges violate the provisions of Article I, section 32, of the Oregon Constitution: first, that the surcharges are imposed only

upon developed property; and second, that the surcharges are calculated by unit rather than by value.

██ ██ Unlike the uniformity provisions in some state constitutions,[8] the provisions of Article I, section 32, following amendment in the early years of the twentieth century, have been definitively construed as permitting any classification that has a rational basis. Indeed, a rational basis will be found to exist if there is "any conceivable state of facts" that would support the classification. *Huckaba v. Johnson,* 281 Or 23, 26, 573 P2d 305 (1978) (citing *Carmichael v. Southern Coal Co.,* 301 US 495, 57 S Ct 868, 81 L Ed 1245 (1937)). *See also Smith v. Columbia County,* 216 Or 662, 341 P2d 540 (1959).[9] When there is "some real and substantial distinction," a classification based thereon is reasonable. *Kane v. Tri-Co. Metro. Transp. Dist.,* 65 Or App 55, 60, 670 P2d 178 (1983), *rev den,* 296 Or 411, 670 P2d 178 (1984) (internal quotations and citation omitted).

Applying those standards, this court cannot conclude that the surcharges violate Article I, section 32, on either basis urged by taxpayers. Imposing a surcharge only upon developed property is not clearly unreasonable and is based upon a genuine difference between such property and undeveloped property. The legislative body acting here could have correctly concluded that safety needs increase when property is developed.

The second assertion of taxpayers is that the use of a flat rate per unit rather than an ad valorem rate violates Article I, section 32. Taxpayers argue that using a per-unit

---

[8] *See, e.g.,* NH Const pt II, art 5, which "requires that all taxes be proportionate and reasonable, * * * that is, equal in valuation and uniform in rate, and just." *Opinion of the Justices,* 117 NH 749, 755, 379 A2d 782 (1977). Compare with the following cases construing that provision: *Opinion of the Justices,* 106 NH 202, 208 A2d 458 (1965) (tax on corporations invalid if individuals engaged in like businesses not taxed); *Cagan's, Inc. v. New Hampshire Dep't of Revenue,* 126 NH 239, 490 A2d 1354 (1985) (tax on sale of vending machine snacks invalid because supermarket sales of similar snacks not taxed); *Opinion of the Justices,* 118 NH 343, 386 A2d 1273 (1978) (no valid reason for classifying electric power plants by size for purposes of ad valorem taxation).

[9] Taxpayers argue that the legislative record made by the city was inadequate to support the distinctions contained in the surcharges. That argument misses the mark; the constitutional analysis is about *conceivable* justifications, not stated ones.

rate within the class of developed properties creates a constitutional infirmity. Taxpayers assert that in order to be uniform, a tax on property must be ad valorem. Taxpayers do not cite, and the court is not aware of, any authority to suggest that Article I, section 32, requires a tax that is imposed upon or related to property be applied using an ad valorem basis. The cases construing the background and purposes of Article I, section 32, give no indication that such a substantive straitjacket can be found in the constitutional text. The court holds that neither the method of calculation nor the classification system of the surcharges violates Article I, section 32, of the Oregon Constitution.

3. *Claims Under Article I, Section 20, of the Oregon Constitution and the Federal Equal Protection Clause*

■ The provisions of Article I, section 20, of the Oregon Constitution and the federal Equal Protection Clause are read similarly. *See, e.g., Huckaba*, 281 Or at 31; *Jarvill*, 289 Or 182-84. It has long been settled that legislative bodies are afforded great latitude in fashioning classifications for tax purposes where the classifications are not made upon the basis of suspect categories or fundamental rights. *Huckaba*, 281 Or at 25-26. Taxpayers have not argued that such is the case here or that strict scrutiny is appropriate in this instance. Tested by the rational relation test, and for the same reasons discussed above in connection with Article I, section 32, the classifications employed by the City of Jacksonville in its Public Safety Act are not unreasonable. The surcharges do not violate Article I, section 20, of the Oregon Constitution or the federal Equal Protection Clause.

Taxpayers have expended considerable effort discussing when an exaction is a tax, directing the court to general treatises and case law from other states. That analysis is not relevant for the Measure 5 or Measure 50 claims because the terms of those provisions and the Oregon statutes and case law interpreting them are determinative authority. In regard to analysis of the state and federal uniformity claims, it is of no effect whether the exaction is a tax or not a tax.

Taxpayers have also expended considerable effort arguing that the amounts collected and the uses of the funds

collected under the surcharges are objectionable or should influence the court's analysis. The amount collected is only relevant under Measure 5 with respect to the surcharge, and will be addressed in further proceedings before this court. Although there is at least one constitutional provision that makes the *use* of funds an element of the limitation upon government,[10] the constitutional provisions that taxpayers have put at issue in this case do not make the *use* of the revenues a factor in the analysis.

## V. CONCLUSION

The surcharge is a tax or imposition subject to Measure 5 limits. Otherwise taxpayers' contentions as to the surcharge and amended surcharge are not well taken. The case will be continued for consideration of the appropriate remedy, if any, following the application of Measure 5 limitations to the surcharge. Now, therefore,

IT IS ORDERED that Plaintiffs' Motion For Summary Judgment is granted in part and denied in part, and

IT IS FURTHER ORDERED that Defendant's Motion For Summary Judgment is granted in part and denied in part, and

IT IS FURTHER ORDERED that the case be continued for further consideration of the appropriate remedy, if any, following application of Measure 5 limitations to the surcharge.

Costs to neither party.

---

[10] Article IX, section 3a, of the Oregon Constitution provides that revenue from certain taxes shall be used only for highways and related projects.