ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
 I. INTRODUCTION
This matter comes before the court on cross-motions for summary judgment by Plaintiff, Yvonne T. Haldeman (taxpayer), and Defendant, Department of Revenue (the department). The appeal centers on whether Oregon Administrative Rule (OAR) 150-316.007-(B), which permits a subtraction in determination of Oregon taxable income of the imputed value of health insurance benefits to a same-sex partner, violates the Oregon Constitution.[1], [2] The court finds that OAR 150-316.007-(B) is constitutional under the Oregon Constitution, and the court grants the cross-motion for summary judgment of the department. *Page 2 
 II. STATEMENT OF FACTS
Taxpayer filed an Oregon income tax return for the 2006 tax year. (Stip Facts at 1.) Taxpayer reported her filing status as single, and taxpayer claimed one exemption for herself. (Id.) The return of taxpayer included a subtraction from Oregon adjusted gross income of $5,313 for "domestic partner benefits." (Id.) That subtraction represented an imputed value of health insurance benefits provided by the employer of taxpayer for the partner of taxpayer.[3] (Id.) The subtraction was an amount that taxpayer included in her federal taxable income for 2006.[4]
(Id.) At the time of this filing, taxpayer was not legally married to her partner, and that partner was not the same sex as taxpayer. (Id. at 2.)
The department denied the subtraction of $5,313 because no provision under Oregon law permitted a subtraction from federal income for the imputed value of health insurance benefits for opposite-sex, unmarried partners. (Id.) Taxpayer appealed that denial to the Magistrate Division of the court. (Compl at 1.) On cross-motions for summary judgment, the magistrate granted the motion of the department, concluding that the classification of the department was rational under Article I, section 20 of the Oregon Constitution.Haldeman v. Dept. of Rev., TC-MD No 070773C, WL 4371517 (Sept 24, 2008). Taxpayer appealed the decision of the magistrate to the Regular Division. (Compl at 1.) *Page 3 
 III. ISSUE
Does OAR 150-316.007-(B) violate the Oregon Constitution by permitting an exclusion from Oregon taxable income of the imputed value of health insurance benefits of a same-sex domestic partner, but no deduction in respect of such benefits of an opposite-sex, unmarried partner?
 IV. ANALYSIS
The focus of this case centers on the constitutionality of OAR 150-316.007-(B). OAR 150-316.007-(B), in relevant part, provides:
 "(1) The imputed value of health insurance benefits provided by an employer to an employee's domestic partner shall be exempt from state income tax.
 "(2) As used in this rule, `domestic partner' means a person in a relationship with an employee, each of whom:
 "(a) is under no legal disability to marry the other person, but for the fact that each is of the same sex;
 "(b) desires a relationship of marriage under Oregon law and would enter into marriage with the other person, and only with the other person, if Oregon law permitted it[.]"
The department enacted OAR 150-316.007-(B) following Oregon Attorney General Opinion No 8268, 49 Op Atty Gen 197 (1999), which interpreted Tanner v. OHSU, 157 Or App 502, 971 P2d 435 (1998),rev den, 329 Or 527 (1999). In Tanner, the Oregon Court of Appeals held that an Oregon public employer violated Article I, section 20, of the Oregon Constitution by providing health insurance benefits to a spouse of a married employee while not providing the same benefits to a same-sex domestic partner of an employee who, but for the law of the state, would have been married to her same-sex domestic partner. 157 Or App at 525. The Oregon Attorney General Opinion also *Page 4 
concluded that the state itself violated Article I, section 20, of the Oregon Constitution by permitting a subtraction from federal adjusted gross income of employer-provided health insurance for the spouse of an employee, but not providing a similar subtraction for a same-sex domestic partner of an employee. 49 Op Atty Gen at 198-99.
Taxpayer challenges the constitutionality of OAR 150-316.007-(B)
under Article I, section 20, of the Oregon Constitution. (Ptf's Mot at 1.) Taxpayer also makes a challenge under Article I, section 32, of the Oregon Constitution. (Id.) The two challenges of taxpayer are addressed separately.
A. The Challenge of Taxpayer Under Article I, Section 20, ofthe Oregon Constitution
Taxpayer makes a challenge to OAR 150-316.007-(B) under Article I, section 20, of the Oregon Constitution — often referred to as the Privileges and Immunities clause.[5] (Ptf's Mot at 1-2.) Article I, section 20, provides that "[n]o law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens." Taxpayer argues that she fits within a class of citizens — opposite-sex, unmarried partners — who, under OAR 150-316.007-(B), are excluded from the privilege of the tax benefits. (Ptf's Mot at 2.) Several analytic steps are required in addressing the argument of taxpayer, as follows:
 (1) What classification exists within the regulation at issue?
 (2) Is that classification a true class? *Page 5 
 (3) If taxpayer does belong to a true class, is that class suspect?
 (4) Depending on the nature of the class of taxpayer, does OAR 150-316.007-(B) pass or satisfy the corresponding level of scrutiny under Oregon law?
See Tanner, 157 Or App at 520-25.
1. The classification of taxpayer within theregulation at issue
As to the deduction of the imputed value of insurance benefits, the federal law and initially the Oregon law distinguishes between married couples and unmarried persons. Married couples receive a benefit and unmarried persons do not. Internal Revenue Code (IRC) section 106(a) (2004) excludes from income employer-provided health benefits. The exclusion also covers employer-provided health benefits to spouses. Treas Reg, § 1.106-1 (2004); see also Or Const, Art XV, § 5a (definition of marriage in Oregon — excluding same-sex unions).[6]
Oregon law then tailors the distinction between married couples and unmarried persons to respect the ruling of Tanner. OAR 150-316.007-(B) permits same-sex unmarried persons who, but for the law of Oregon limiting marriage to heterosexual couples, would marry, to exclude from income employer-provided health benefits.[7]
Taxpayer suggests that, rather than characterize the classifications in OAR 150-316.007-(B) as married couples and unmarried persons, the classifications are that of unmarried opposite-sex partners and unmarried same-sex partners. That suggestion fails *Page 6 
to recognize the purpose behind OAR 150-316.007-(B). OAR 150-316.007-(B) applies to persons who would marry, if Oregon law permitted, but cannot due to sexual orientation and other state law. The legislature could amend the law to give benefits to those who can marry and choose not to marry, but the legislature is under no requirement to do so and the court will not "edit" the law to find such a requirement. Accordingly, the class comparison for purposes of Article I, section 20, of the Oregon Constitution remains between married and unmarried persons.
2. Is the classification of taxpayer a true class?
The next question the court must address is whether the classification at issue — married couples and unmarried persons — involves a true class. As Tanner directed, within the case law of Article I, section 20, the reference to "class" within the clause "takes on special meaning[.]" 157 Or App at 520. A challenged law must "disparately treat a `true class'" to violate Article I, section 20. Id. (citing State ex rel Huddleston v.Sawyer, 324 Or 597, 610, 932 P2d 1145, cert den522 US 994 (1997)).
The description of a "true class" requires that the court "determine whether the class `is created by the challenged law itself' or `by virtue of characteristics * * * apart from the law in question.'" Sealey v. Hicks,309 Or 387, 397, 788 P2d 435, cert den 498 US 819 (1990),overruled on other grounds by Smothers v. Gresham Transfer,Inc., 332 Or 83, 23 P3d 333 (2001). A non-true class is one that, but for the challenged law in question, would "have no identity at all." Tanner, 157 Or App at 521. Disparate treatment of a non-true class would not violate Article I, section 20, because a law "cannot disparately affect a class that the legislation *Page 7 
itself creates." Id. (citing Clark, 291 Or at 240). The court rejects such challenges. See e.g., MacPherson v.DAS, 340 Or 117, 130 P3d 308 (2006).
Courts describe characteristics of a true class, one that is "apart from the challenged law itself," in a variety of ways.See Tanner, 157 Or App at 521. As described in Tanner:
 "The cases refer to classification by `ad hominem characteristic,' Van Wormer v. City of Salem, 309 Or 404, 408, 788 P2d 443 (1990), by `personal characteristic,' Zockert v. Fanning, 310 Or 514, 523, 800 P2d 773 (1990), and by `antecedent personal or social characteristics or societal status,' [Hale v. Port of Portland, 308 Or 508, 525, 783 P2d 506 (1989)]."
Id. In Tanner, the court found the plaintiffs in the case — "unmarried homosexual couples" — a class created by "adhominem, personal and social characteristics," and thus, members of a true class. Id. at 523-24.
In this case, taxpayer argues in her Response of Cross-Motion for Summary Judgment (Response) that she is a member of a "true class." (Ptf's Resp at 2.) The department argues, initially, that taxpayer is not a member of a "true class" at all, and that her class is created by OAR 150-316.007-(B) itself. (Def's Br in Supp of Cross-Mot for Summ J at 6 (hereinafter Def's Cross-Mot).) The court disagrees with this argument of the department. As Tanner
noted, there was "no question" that marital status and gender were "ad hominem, personal and social characteristics."157 Or App at 523-24. Such a class existed long before the promulgation of OAR 150-316.007-(B). The classification of taxpayer as an unmarried person within the regulation at issue involves a true class. It involves characteristics or status existing apart from the regulation itself. *Page 8 
 3. The classification of taxpayer as suspect or non-suspect
While unmarried persons may be members of a true class, the question that determines the level of scrutiny of the court is whether that class has been held to be suspect or deserving of special scrutiny. See Tanner, 157 Or App at 521-24. If a classification does not rise to the level of suspect, it is subject to a rational basis test. See id.
As described in Tanner, true classes that are "suspect" are often described in terms of "`immutable' characteristics" — or the inability to alter or change a characteristic.Id. at 522 (citing Hewitt v. SAIF,294 Or 33, 45, 653 P2d 970 (1982)). Classic examples of immutable characteristics include gender or race. See Hewitt v. SAIF,294 Or at 46 (finding that male gender was inherently "suspect").Tanner noted that Hewitt, the leading opinion on suspect classes, defined a suspect class, in addition to having an "immutable" characteristic, as one that "`can be suspected of reflecting `invidious' social or political premises, that is to say prejudice or stereotyped prejudgments.'" 157 Or App at 522 (quotingHewitt, 294 Or at 45).
An "immutable" characteristic is not an absolute requirement for a true class to be "suspect." Tanner, 157 Or App at 522. Cases subsequent to Hewitt, described in Tanner, noted that "`inherently suspect'" classes such as alienage, religion, and even gender, may be altered or changed. See id. at 522-23. The court in Tanner then integrated the opinion in Hewitt with the subsequent case law to explain that what made a class "suspect" is if the characteristics of the class "are historically regarded as defining distinct, socially recognized groups that have been the subject of adverse social or political stereotyping or prejudice."Id. at 523. The Tanner court then went on to find that it had "no difficulty" in finding the class of plaintiffs, based on sexual orientation, to be a suspect class. Id. at 524. *Page 9 
Unlike same-sex domestic partners, case law has not held that a class based on marital status alone rises to the level of a "suspect" class. First, courts have previously held that marital status is not a class defined by an immutable trait. Crocker andCrocker, 332 Or 42, 55, 22 P3d 759 (2001) ("Marital status is not an immutable trait."); see also Tanner,157 Or App at 522 (noting cases subsequent toHewitt no longer require immutability as a trait of a suspect class). Very little case law regarding distinction in treatment between married couples and unmarried persons exists, likely because opposite-sex, unmarried persons may marry at will. See Clark,291 Or at 240-41 (finding a rejection of the class as suspect in earlier decisions when "the law leaves it open to anyone to bring himself or herself within the favored class on equal terms").
Oregon case law has not recognized either single or marital status as a class "routinely targeted for adverse treatment over the years in our society." McGinley and McGinley,172 Or App 717, 726, 19 P3d 954 (2001).[8] Here, taxpayer does not argue that her class has historically suffered prejudice or stereotyping. Taxpayer argues that she "is going through an adverse social and political prejudice with this ruling." (Ptf's Mot at 1.) Taxpayer does not elaborate on this assertion, does not contribute any evidence of her assertion, and does not cite to any case law supporting an argument of mistreatment of unmarried persons.
Taxpayer requests that the analysis of Tanner to same-sex, domestic partners apply to opposite-sex, unmarried persons. (Ptf's Resp at 1.) The analysis of Tanner, however, is inapplicable to opposite-sex, unmarried persons. Tanner and Oregon law provide that the law may not say, on the one hand, that a person must be married to receive a benefit, and yet, with *Page 10 
the other hand, say the same person cannot marry under the law, and will not receive that benefit. See Tanner, 157 Or App at 525. OAR 150-316.007-(B) needs not be applied to heterosexual couples because they are not subject to an absolute denial of the right to marry under the Oregon Constitution. Based on the case law, the court finds that the class of taxpayer is non-suspect.
4. The non-suspect classification of taxpayer passes therational basis test.
The treatment of the class of taxpayer, a non-suspect true class, "may be justified on a `rational basis' examination."Tanner, 157 Or App at 523 (citing Seto v. Tri-County Metro.Transportation Dist., 311 Or 456, 814 P2d 1060 (1991)). WhileTanner indicated that case law on the "`rational basis' examination" was not "entirely consistent," recent Tax Court cases have discussed the rational basis test when a classification is made for tax purposes that is made on the basis of a non-suspect category. See, e.g., Knapp v. City of Jacksonville,18 OTR 22, 39 (2004), aff'd,342 Or 268, 151 P3d 143 (2007) (hereinafter Knapp I); seealso Tanner, 157 Or App at 523.
Knapp I involved a property tax matter where both the taxpayer and the City of Jacksonville (the city) moved for summary judgment. 18 OTR at 24. The taxpayer challenged a public safety surcharge imposed by the city as invalid under both Article I, section 20, and under the Equal Protection Clause of theFourteenth Amendment to the United States Constitution. Id.
Citing to Huckaba v. Johnson,281 Or 23, 31, 573 P2d 305 (1978), and Jarvill v. City ofEugene, 289 Or 157, 182-84, 613 P2d 1 (1980), the Tax Court upheld the surcharge, observing that Article I, section 20, and the Equal Protection Clause of the Fourteenth Amendment are read similarly. Knapp I, 18 OTR at 39. The court further observed that "[i]t has long been settled that legislative bodies are afforded great latitude in fashioning classifications for tax purposes where *Page 11 
classifications are not made upon the basis of suspect categories or fundamental rights."[9] Id. The court then referred to its rational basis analysis under Article I, section 32, of the Oregon Constitution, of which the court stated that "a rational basis will be found to exist if there is `any conceivable state of facts' that would support the classification."Id. at 38 (citing Huckaba, 281 Or at 26).
A rational basis for the adoption by the department of OAR 150-316.007-(B) is to avoid litigation regarding violation of Article I, section 20. Tanner and the Attorney General Opinion that followed Tanner make clear such litigation was quite likely, if not certain. Limiting the subtraction from Oregon adjusted gross income of the imputed value employer-provided health benefits to married couples and those that would marry, but for the limitation under Oregon law, is constitutional under Article I, section 20.
B. The Challenge of Taxpayer Under Article I, Section 32, ofthe Oregon Constitution
Taxpayer makes a second challenge to OAR 150-316.007-(B) on the grounds that the regulation violates Article I, section 32 of the Oregon Constitution. (Ptf's Mot at 1.) Article I, section 32 provides:
 "No tax or duty shall be imposed without the consent of the people or their representatives in the Legislative Assembly; and all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax." *Page 12 
Taxpayer, without citation of authority, argues that OAR 150-316.007-(B) violates Article I, section 32, because it "was not voted on by the consent of the people" and that it was "created out of a judgment decision from a court case." (Ptf's Mot at 1.)
1. Article I, section 32, requires the same rational basisexamination as Article I, section 20.
Article I, section 32, is another section of the Oregon Constitution that provides protection to a classification of persons. While the section is a constraint, Article I, section 32, does permit a classification of persons for imposition of nonuniform taxation. Wilson v. Dept. of Rev.,302 Or 128, 132, 727 P2d 614 (1986). Describing the ability of the legislature to make classifications for tax purposes, the Oregon Supreme Court has said that "[t]he legislature may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it."Huckaba, 281 Or at 26.
Case law examines Article I, section 32, under the same rational basis examination of Article I, section 20. See Knapp I,18 OTR at 37-39. Here, as to Article I, section 32, there is no uniformity issue as the classification already passes muster under Article I, section 20, under the analysis above.
2. The allowance of a subtraction may well not involve an imposition of a tax, but even if it does, the matter has been adopted by the people or representatives of the people.
OAR 150-316.007 permits the subtraction of imputedincome associated with health care benefits in determining Oregon taxable income. It does not itself impose a tax or aduty upon a taxpayer. If anything, OAR 150-316.007-(B) is an indirect imposition of tax, as suggested by *Page 13 
taxpayer in oral argument. Taxpayer argues that by not permitting such a subtraction to opposite-sex, unmarried persons, the department was, in essence, imposing an additional tax. Even treating the rule as an imposition, it is valid.
Taxpayer complains that the democratic and republican principles found in Article I, section 32 — adoption of law by the people or their representatives — were violated. However the rule in question here is an administrative application of a legislatively adopted rule, as limited by a popularly ratified constitutional provision.
The legislature decided to adopt by incorporation the federal exclusion for benefits to married couples found in IRC section 106. So far, so good as to Article I, section 32. That legislative decision was, however, edited pursuant to Tanner through application of the popularly adopted constitutional provision. Application of a popularly adopted constitutional rule to a legislatively adopted statute is not a violation of the language or purposes of Article I, section 32. Of course, if the legislature had desired to not extend the IRC section 106 benefits as required byTanner, it could have denied the tax benefit to all couples, married or not. It did not do so.[10]
 V. CONCLUSION
For the reasons stated above, the court concludes that OAR 150-316.007-(B) does not violate the constitutional limitations of the Oregon Constitution invoked by taxpayer. *Page 14 
Now, therefore,
IT IS ORDERED that the motion for summary judgment of Plaintiff is denied.
IT IS FURTHER ORDERED that the cross-motion for summary judgment of Defendant is granted.
Dated this ___ day of September, 2010.
THIS DOCUMENT WAS SIGNED BY JUDGE HENRY C. BREITHAUPTON SEPTEMBER 21, 2010, AND FILED THE SAME DAY. THIS IS A PUBLISHEDDOCUMENT.
[1] Unless otherwise noted, all references to OAR 150-316.007-(B)
are to the version effective September 1, 2000.
[2] The court will not address a challenge to OAR 150-316.007-(B)
under the United States Constitution. Taxpayer made an allegation in her motion for summary judgment that the department was "not in compliance with the Equal Protection Clause of the Fourteen[th] Amendment to the U.S. Constitution." (Ptf's Opening Br on Cross-Mots for Summ J at 2 (hereinafter Ptf's Mot).) Tax Court Rule (TCR) 47 states that the court shall grant the motion "if the pleadings, depositions, affidavits, declarations and admissions on file show * * * that the moving party is entitled to prevail as a matter of law." Emphasis added. Beyond the statement above in her motion, Taxpayer did not submit any evidence or case law supporting her argument under the US Constitution. Taxpayer also conceded the challenge to OAR 150-316.007-(B) under the US Constitution during oral argument.
[3] Taxpayer refers to her relationship with her opposite-sex partner as her "domestic partner." "Domestic partner" is a term of art defined under OAR 150-316.007-(B), which requires that the members of a domestic partnership be of the same sex, and but for that fact, would marry if permitted under Oregon law. To avoid confusion with the term of art, hereinafter, the court refers to the relationship of taxpayer and of similar relationships generally as those of opposite-sex, unmarried partners.
[4] Under federal law no exclusion is available to a taxpayer for the imputed income associated with health insurance provided by an employer for an unmarried partner.
[5] Article I, section 20, provides two separate protections to citizens because it "forbids inequality of privileges or immunities not available upon the same terms, first to any citizen, andsecond to any class of citizens. Tanner,157 Or App at 520 (quoting State v. Clark,291 Or 231, 237, 630 P2d 810, cert den,454 US 1084 (1981) (emphasis added). Here, taxpayer is arguing that she is a member of a class — the second protection of Article I, section 20 — and that OAR 150-316.007-(B) discriminates against that class — opposite-sex, unmarried partners. (Ptf's Mot at 2.) Article I, section 20, applies to enforcement or application of law as well as adoption of law. State v.Freeland, 295 Or 367, 667 P2d 509 (1983).
[6] 5.1 USC § 7 defines the terms marriage and spouse as not applicable to persons of the same sex.
[7] The recent opinion in Shineovich v. Kemp,229 Or App 670, 214 P3d 29, rev den, 347 Or 365 (2009) answered whether Measure 36 — the enactment of Article XV, section 5a, of the Oregon Constitution — "implicitly amended Article I, section 20, with respect to benefits granted on the basis of marital status, thereby overruling Tanner."229 Or App at 682. The court found that Tanner was not overruled or limited by Measure 36 as it spoke to only the definition of marriage, but not the privileges or benefits inherent in marriage. Id. at 682-85.
[8] Under the US Constitution, "distinctions between married and unmarried people have not yet been recognized as suspect."McGinley, 172 Or App at 730. The level of review of the distinction is similar to the Oregon rational basis test in federal courts. See e.g., Druker v. Comm'r, 697 F2d 46 (2d Cir 1982),cert den 461 US 957 (1983).
[9] The department is not a legislative body, but under ORS 305.100(1), the legislature granted authority to the department to "[m]ake such rules and regulations it deems proper to regulate its own procedure and to effectually carry out the purposes for which it is constituted." All references to the Oregon Revised Statutes (ORS) are to 2005.
[10] Indeed, subsequent to the years at issue the legislature extended and confirmed parity in allocation of benefits as between married and homosexual couples. See Or Laws 2007, ch98 (Oregon Family Fairness Act).