Argued and submitted November 2, 2006, decision of Tax Court
affirmed January 19, 2007

Carol R. KNAPP,
Dee West, Gary West,
Frank Crum, Georgeann Crum,
Fred Miller, Marie Miller,
Don Parker, Linda K. Bush,
Carolyn Endeman, Paul Hayes,
and Alvin K. Reiss,
*Appellants,*

*v.*

The CITY OF JACKSONVILLE, OREGON,
*Respondent.*

(TC 4641; SC S52624)

151 P3d 143

Karen M. Williams, Lane Powell PC, Portland, argued the cause and filed the briefs for appellants.

Kurt H. Knudsen, Ashland, argued the cause and filed the brief for respondent.

Before De Muniz, Chief Justice, and Carson,** Gillette, Durham, Balmer, Kistler, and Walters, Justices.***

WALTERS, J.

---

** Carson, J., retired December 31, 2006, and did not participate in the decision of this case.

*** Linder, J., did not participate in the consideration or decision of this case.

## WALTERS, J.

In this tax case, we decide whether the City of Jacksonville (city) imposed an unconstitutional tax on property, either when it originally adopted an ordinance requiring persons responsible for paying sewer and water bills to pay a public safety surcharge of $15 per unit or when it adopted an amended version of that ordinance. More specifically, we decide whether the original or amended surcharge constituted a tax on property under Article XI, sections 11 ("Measure 50") and 11b ("Measure 5") of the Oregon Constitution[1] or violated either Article I, sections 20 and 32, of the Oregon Constitution[2] or the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[3]

---

[1] We refer to those constitutional amendments by their measure numbers in accordance with common parlance. *See Shilo Inn v. Multnomah County,* 333 Or 101, 105 n 2, 36 P3d 954 (2001) (following that practice). This court in *Shilo* provided the following overview of those provisions:

"In 1990, the voters approved Measure 5, which added Article XI, section 11b, to the Oregon Constitution. Subsection (1) of that measure provides[, in part]: '[T]axes imposed upon any property shall be separated into two categories: One which dedicates revenues raised specifically to fund the public school system and one which dedicates revenues raised to fund government operations other than the public school system. * * * [The limits set forth] shall apply whether the taxes imposed on property are calculated on the basis of the value of that property or on some other basis[.]'

"* * * * *

"In 1997, the legislature proposed and the people adopted Measure 50, which repealed, among other things, the then-existing Article XI, section 11, and replaced it with an entirely new section 11. Measure 50 transformed the *ad valorem* property tax scheme from a 'levy-based' system to a 'rate-based' system. Among its other effects, the measure reduced the assessed value of property to 10 percent below 1995 levels, limited the amount of any increase in assessed value to three percent per year, and required each 'local taxing district' to certify a 'permanent limit on the rate of *ad valorem* property taxes imposed by the district for tax years beginning after July 1, 1997' (the 'permanent rate'), to be applied to each property in that district."

*Id.* at 106-07 (citations omitted).

[2] Article I, section 20, provides: "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

Article I, section 32, provides: "No tax or duty shall be imposed without the consent of the people or their representatives in the Legislative Assembly; and all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax."

[3] The Fourteenth Amendment to the United States Constitution provides, in part: "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws."

Appellants are 12 owners of developed real property who were subject to the surcharges. They brought the present proceeding in the Oregon Tax Court seeking a refund of the taxes collected and declaratory and injunctive relief. The Tax Court held that the initial city ordinance had imposed a tax on property that was subject to Measure 5 limitations, but that the city's later amendment rendered Measure 5 inapplicable. *Knapp v. City of Jacksonville*, 18 OTR 22 (2004) *(Knapp I)*. The court further held that the city had not violated Measure 50 or other state or federal constitutional provisions in enacting the original or amended ordinances. *Knapp I*, 18 OTR at 37-40. Finally, the court ordered the city to refund to plaintiffs the amounts collected in excess of Measure 5 limitations and declined to award costs to either party. *Knapp v. City of Jacksonville*, 18 OTR 236 (2005) *(Knapp II)*. For the reasons that follow, we affirm the decisions of the Tax Court.

In April 2003, the Jacksonville City Council passed an ordinance imposing a surcharge on sewer and water users. The ordinance provided that its purpose was to generate revenue to "help pay for the benefits conferred on [c]ity residents and businesses by the provision of an adequate program of public safety" by placing a $15 monthly surcharge on each residential or nonresidential unit of developed property within the city limits. Jacksonville, Or, Public Safety Act, §§ 3.01.020(2), 3.01.040(2), (4) (2003). The ordinance directed that the surcharge be placed on all monthly water and sewer bills and made the persons responsible for paying those bills normally responsible for paying the surcharge. *Id.* at §§ 3.01.040(2), 3.01.060(2). However, the ordinance also made the property owner "at all times primarily responsible for payment." *Id.* at § 3.01.060(2). The ordinance further provided that unpaid surcharges could be "imposed as a lien on the owner's property." *Id.* at § 3.01.060(8). After plaintiffs initiated this action, the city amended the original ordinance, deleting the liability and lien provisions and assigning ultimate responsibility for surcharge payment to the persons having the right to occupy the property. Jacksonville, Or, Public Safety Act (Amended), § 3.01.060 (2)-(3), (8) (2003).

On appeal, plaintiffs contend that not only did the original ordinance impose a tax on property in excess of

Measure 5 limitations, it also violated Measure 50 and the other state and federal constitutional provisions cited above. Plaintiffs also argue that the Tax Court was required to void the original ordinance and award them equitable attorney fees.

This court's decision in *Roseburg School Dist. v. City of Roseburg*, 316 Or 374, 851 P3d 595 (1993), establishes the appropriate analytical framework for determining whether a fee or charge constitutes a tax on property subject to Measure 5. Accordingly, a brief summary of that case is useful.

*Roseburg* involved a storm drainage utility fee, which that city had imposed on persons who paid water charges or who had the right to occupy property. *Roseburg*, 316 Or at 377. As with the present case, the issue was whether the fee constituted a tax subject to the limitations of Measure 5. *Id.* at 379. In making that determination, this court looked first to the definition of "tax" that "shall apply" to the provisions of Measure 5:

> "[A] 'tax' is 'any charge imposed by a governmental unit upon property or upon a property owner as a direct consequence of ownership of that property except incurred charges and assessments for local improvements'."

*Roseburg*, 316 Or at 378 (quoting Article XI, section 11b(2)(b)).

This court concluded that, although the *Roseburg* fee *related* to property, the city had not imposed the fee upon property or upon a property owner because (1) the city had no lien provision that could burden the property, and (2) the city had no mechanism for assessing default liability exclusively against the property owner "as a direct consequence of ownership." *Roseburg*, 316 Or at 380-81. This court noted that the *Roseburg* fee had the following characteristics:

(1) The obligation to pay the fee arose when a person used the storm drainage service.

(2) The city presumed that storm drainage usage occurred on all improved premises.

(3)   The city required the person paying water utility charges to pay the storm drainage fee unless another person had assumed that obligation in writing.

(4)   If no water service to the property existed, the city assessed the storm drainage fee against the person having the right to occupy the property.

(5)   The city had no provision for attaching a lien against property for nonpayment of the fee.

*Id.* at 377, 380-81.

In the present Jacksonville case, the Tax Court determined that, because the original ordinance permitted the city both to impose a lien on property and to hold a property owner rather than an occupant liable for nonpayment, that ordinance was significantly different from the *Roseburg* ordinance and was subject to Measure 5 limitations. *Knapp I*, 18 OTR at 28. However, according to the Tax Court, because the city subsequently deleted those problematic provisions, the amended ordinance was exempt from those limits. *Id.* at 35.

Plaintiffs do not consider the city's amendments curative. Instead, plaintiffs argue that the city obviously was attempting to evade constitutional constraints, an effort that, in plaintiffs' view, at most disguises but does not eliminate the true nature of the surcharge.

Underlying plaintiffs' argument in that respect is the belief that the voters intended Measure 5 and Measure 50 to be a comprehensive limit on all property taxes and that all revenue-generating mechanisms imposed to fund general municipal obligations are property taxes. From that premise, plaintiffs assert that, because the city sought to generate funds to pay for police and fire services, the amended surcharge imposes a tax subject to Measure 5 limitations.

■      Plaintiffs' premise is not borne out by the text of Measure 5. As this court explained in *Roseburg*, Measure 5 is only a limitation on a "tax" as therein defined:

"By its terms, Article XI, section 11b, is a limitation on only those certain forms of revenue generation that fall within its definitions. It is not a limitation on other forms of revenue generation that do not fall within its definitions. It

is clear that the constitutional provision defines those charges that it limits and, by its terms, excludes from its limits other forms of revenue generation[.]"

316 Or at 381. Thus, plaintiffs' broadside approach fails— Measure 5 simply does not limit *all* charges that generate revenue. The question remains, however, whether the Measure limits *this* revenue-generating charge.

Respecting that issue, plaintiffs first appear to argue that the amended surcharge is a tax upon property because, even after deleting the original lien provisions, the city had the ability to use other law to place liens on property for nonpayment of the surcharge. Plaintiffs posit that, should a protesting homeowner choose to pay sewer and water charges only, the city would, by the terms of the ordinance, apply that payment first to the surcharge and then to the remaining sewer and water charges. Jacksonville, Or, Public Safety Act, § 3.01.090(1). Plaintiffs contend that an independent existing city regulation then would allow the city to collect those unpaid sewer charges by having the county impose a lien on the property.[4] Even assuming that that hypothetical action were possible, a question that we do not decide, the existence of that sewer regulation is not determinative. It is always theoretically possible for a governmental entity, pursuant to a valid source of authority, to secure a lien when it must take action under other law to collect an unpaid fee or tax, including an unpaid income tax. *See, e.g., In re Inman's Estate*, 101 Or 182, 196, 199 P 615 (1921) (nonpayment of death duty can result in lien on property without transforming tax on right to inherit property into direct tax on property); ORS 18.150 - 18.170 (governing liens on real property to satisfy judgments); ORS 314.417 (establishing lien on property for failure to pay income tax). The existence of that other law does not transform the fee or tax into a property tax.

---

[4] Plaintiffs cite the following regulation:

"If said sewer service charges are not paid when due * * * the amounts so unpaid may be certified by the City Recorder to the county assessor of Jackson County, Oregon, and shall be by them assessed against the premises served as provided by law, and shall be collected and paid over to the city in the same manner as other taxes are assessed, collected and paid. Such unpaid charges may also be recovered in an action at law in the name of the city, with interest as aforesaid."

Jacksonville, Or, Water Service Regulations, § 13.04.140 (2)(C) (1993).

Next, plaintiffs argue that the amended surcharge is a tax "upon a property owner" within the meaning of Measure 5. Plaintiffs recognize that the city's amended surcharge makes property occupants, rather than owners, ultimately responsible for the surcharge and that, in *Roseburg*, this court determined that a charge on occupants is not one imposed on owners of property. *Roseburg*, 316 Or at 381. Nonetheless, plaintiffs contend that occupants are, themselves, "owners" of property because, although they do not own the fee interest, they necessarily own some lesser real property interest. In so arguing, plaintiffs overlook two things: (1) the term "occupant" includes those who may hold no more than a privilege or license to use property; and (2) even an occupant who holds a possessory interest in land is not an owner of property for tax purposes.

The term "occupant" includes both those with an incorporeal privilege or license to use land and those who hold a corporeal possessory interest in the land itself. *Sproul v. Gilbert*, 226 Or 392, 406-07, 359 P2d 543 (1961). By making all occupants liable for payment of the amended surcharge, the city included those persons without a corporeal possessory interest in land within the ambit of the ordinance. Thus, the city made clear its intent to impose the charge based on use of the property and not based on ownership status.

■     Furthermore, property taxes in Oregon are assessed on real property as a whole and in the name of the owner of the whole. ORS 308.215(1)(a); *Shields v. Dept. of Rev.*, 266 Or 461, 470, 513 P2d 784 (1973) (so stating). Real property includes all lesser interests, such as "[a]ny estate, right, title or interest whatever in the land or real property, less than the fee simple." ORS 307.010(1)(b)(E); *see also Swan Lake Mldg. Co. v. Dept. of Rev.*, 257 Or 622, 625, 478 P2d 363 (1971) (true cash value of land for tax purposes includes all lesser interests and is assessed to one having title to that land). The limited instances in which severable, separately owned interests may be separately taxed are specifically prescribed. *See, e.g.*, ORS 308.115 (illustrating proposition for mineral interests and buildings). Except in those instances, the term "owner" in the property tax context connotes the

owner of the fee and all included interests and cannot simultaneously mean a different holder of a lesser-included interest. Accordingly, occupants are not owners of property for tax purposes, and the amended surcharge cannot be characterized as a tax on a property owner.

■     We now consider plaintiffs' claim that, as a tax on property subject to Measure 5 limitations, the city's original surcharge also was subject to the limitations of Measure 50. The Tax Court reasoned that, although the original ordinance imposed a tax on property, it did not impose an ad valorem tax subject to Measure 50 limitations. *Knapp I*, 18 OTR at 35. We agree. The text of Measure 50 is clear. Article XI, section 11, by its terms, places a limitation upon the rate of ad valorem property taxes. In this case, the city imposed a $15 flat fee on each unit of developed property; it did not ratably impose assessments based on the value of property. Therefore, the surcharge was not subject to Measure 50 limitations.

■■     Plaintiffs' remaining constitutional arguments, that the surcharges violated the provisions of Article I, sections 20 and 32, of the Oregon Constitution and the Equal Protection Clause of the United States Constitution, require plaintiffs to establish that the city had no rational basis for creating the class of persons subject to the charges. *See Crocker and Crocker*, 332 Or 42, 55, 22 P3d 759 (2001) (stating standard with respect to equal privileges and immunities and equal protection analysis); *Jarvill v. City of Eugene*, 289 Or 157, 613 P2d 1 (1980) (stating standard). A classification is rationally based "if it rests upon genuine differences" and those differences bear a "reasonable relationship to the legislative purpose." *Jarvill*, 289 Or at 180; *Huckaba v. Johnson*, 281 Or 23, 26, 573 P2d 305 (1978). Applying those principles, the Tax Court correctly determined that "[i]mposing a surcharge only upon developed property * * * is based upon a genuine difference between such property and undeveloped property [because the city] could have correctly concluded that safety needs increase when property is developed." *Knapp I*, 18 OTR at 38.

Plaintiffs ask us to take Article I, section 32, farther and hold that its requirement that taxation "be uniform on

the same class of subjects" means that all taxes on property must be assessed on an ad valorem basis. The answer to that argument as to the amended surcharge is that it is not a tax on property, for the reasons that we have discussed previously. As to the original surcharge, Article I, section 32, does not require ad valorem taxation. The Oregon Constitution was amended in 1917 to eliminate any such contention. *See Standard Lbr. Co. v. Pierce*, 112 Or 314, 228 P 812 (1924) (constitution originally required uniform "rate" of taxation but was amended to eliminate that requirement). Plaintiffs rely on *Mathias v. Dept. of Rev.*, 312 Or 50, 817 P2d 272 (1991), but that case actually stands for the proposition that, *within an ad valorem taxation scheme*, "tax rates must be uniform within 'the same class of subjects' " to be constitutional. *Mathias*, 312 Or at 60. Plaintiffs do not explain how that case could serve as a platform to invalidate property taxes assessed without regard to property value, and we see no basis for doing so.

■     In summary, we hold that the original surcharge was not subject to Measure 50 and that the amended surcharge was subject to neither Measure 5 nor Measure 50. We uphold both ordinances against other constitutional challenges. It remains for us to discuss plaintiffs' argument that the Tax Court did not order an appropriate remedy for charges imposed by the original ordinance in excess of those permitted by Measure 5 and that we should declare that ordinance void, require the city to refund all amounts thereby collected, and award plaintiffs their attorney fees.

Plaintiffs brought this action under ORS 305.580 and ORS 305.583[5] to have the Tax Court declare that the city's surcharges exceeded Measure 5 limits. ORS 305.587 provides that the appropriate remedy for such a violation is a refund of the portion of the fee collected in excess of the limit:

---

[5] ORS 305.580 states that "ORS 305.583, 305.585, 305.587 and 305.589 shall provide the exclusive remedy for determination of questions concerning * * * [t]he effect of the limits of section 11b, Article XI of the Oregon Constitution on taxes, fees, charges and assessments of units of government." ORS 305.583 then sets forth the applicable definitions and procedures when "an interested taxpayer [files a petition in the] Oregon Tax Court to determine a question described in ORS 305.580." ORS 305.583(1).

"(1) If, in a proceeding commenced under ORS 305.583, the regular division of the Oregon Tax Court finds that a challenged tax, fee, charge or assessment is subject to the limits of section 11 or 11b, Article XI of the Oregon Constitution, the tax court may:

"(a) Order the government unit to make refunds to petitioners of any part of the challenged tax, fee, charge or assessment imposed on or after the date that is 90 days before the date the petition was filed and that was collected in excess of the limits of section 11 or 11b, Article XI of the Oregon Constitution. * * *

"(b) Order such other relief as it considers appropriate, including cancellation of taxes imposed but not collected, but such relief shall have prospective effect only. * * *"

*See also Smith v. Multnomah County Board of Commissioners,* 318 Or 302, 359, 865 P2d 356 (1994) (ORS 305.583 and ORS 305.587 are exclusive means to obtain refund of taxes collected in excess of Measure 5 limits). Accordingly, we hold that the Tax Court correctly ordered the city to refund to plaintiffs the amounts collected from them exceeding the constitutional limits of Measure 5. ORS 305.587(1)(a); *Knapp II,* 18 OTR at 239. We also hold that the Tax Court correctly declined to offer prospective relief because the city already had amended the offending ordinance. ORS 305.587(1)(b); *Knapp II,* 18 OTR at 239.

Finally, our review of the record does not indicate that plaintiffs argued for an award of equitable attorney fees in the remedy phase of the case before the Tax Court or by submitting a petition for attorney fees. *See* TCR 68(C) (setting forth procedure for seeking award of attorney fees). That argument is unpreserved, and we will not consider it for the first time here. *See Ailes v. Portland Meadows, Inc.,* 312 Or 376, 380, 823 P2d 956 (1991) (stating principle); ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule * * *.").

The decision of the Tax Court is affirmed.