ORDER
 I. INTRODUCTION
This matter is generally before the court on the petition of Old Town Lofts Condominium Association (petitioner), filed under ORS 305.580[1]
and ORS 305.583, seeking a declaration that a fee levied by the City of Portland (respondent) is either invalid or subject to the limitations of Article XI, section 11b of the Oregon Constitution (Measure 5). This matter is specifically before the court on the motion for partial summary judgment filed by petitioner, presenting the single issue of whether the fee is subject to the limitations of Measure 5. (Pet'r's Mem of Law in Support of Mot for Partial Summ J at 1 (hereinafter Pet'r's Mem).).
 II. FACTS
Petitioner is an Oregon nonprofit corporation. Petitioner is the "association of unit owners," acting pursuant to ORS chapter 100 (the Condominium Act) with respect to a building in the City of Portland that contains 60 residential condominium units and one commercial *Page 2 
condominium unit (the building). (Stip of Mat Facts at 1, ¶¶ 2-4.) That building is located in the Downtown Business District of respondent and is served by one water main. (Id. at 1, ¶¶ 4-5.) Petitioner is engaged in "property management activities" as that term is defined in section 6.06.020(H), a portion of the Code of the respondent, adopted as Ordinance No. 182925 (the Ordinance). (Id. at 2, ¶¶ 6-7.) The Ordinance imposes a "Property Management License Fee" (the fee) on property managers for the privilege of engaging in "property management activities" in the Downtown Business District. Portland City Code, §§ 6.06.01, 6.06.02(H) (Stip of Mat Facts, Ex 2 at 1.) The license fee does not apply to a dwelling unit that is owner occupied and has its own separate water service. (Stip of Mat Facts, Ex 2 at 2.) However, in the case of a multi-unit condominium building, the fee applies unless the dwelling units have separately metered water service. Portland City Code, § 6.06.212 (Stip of Mat Facts, Ex 2 at 2.)
 III. ISSUE
Is the fee a "tax" for purposes of Measure 5?
 IV. ANALYSIS
As to the issue presented by the motion for partial summary judgment of petitioner, there are no disputed material facts. In addition to opposing the motion of petitioner on the merits, respondent has also asserted that petitioner does not have the requisite standing to initiate this proceeding. (Def's Resp to Pet'r's Mot for Partial Summ J at 3-5 (hereinafter Def's Resp).) The court will address that issue before addressing the merits of this Measure 5 challenge.
ORS 305.580 and ORS 305.583 together provide that an "interested taxpayer" may petition this court for a determination of the application of Measure 5 to any tax, fee or charge. An "interested taxpayer" is defined as including any person subject to the tax, fee or charge in question. ORS 305.583(2). Although the determination of this case on the merits may involve a *Page 3 
determination of whether the fee is, for purposes of applying constitutional limitations, imposed on the individual unit owners or the association, there is no question that the bill or billing for the fee that is challenged was sent to petitioner. Respondent thus considered petitioner as "subject to" the fee and the court concludes that petitioner therefore has standing to bring the petition and receive a judicial determination of the matter. It is to that determination on the merits that the court now turns.
The fee in question here is a "tax" for purposes of Measure 5 if it is "imposed by a governmental unit upon property or upon a property owner as a direct consequence of ownership of that property." Or Const, Art XI, §11b(2)(b). Accordingly, there must be:
 (1) An imposition by a governmental unit;
 (2) Upon property, or
 (3) Upon a property owner as a direct consequence of ownership of that property.
Id.
In this case the second element does not appear to be at issue. Neither party argues that the fee creates or imposes an in rem obligation to be collected, if necessary, through foreclosure of a lien on property created pursuant to the Ordinance. There remains the question of whether the fee is an imposition by a governmental unit upon a property owner as a direct consequence of ownership of "that" property.
It is as to the remaining element of the constitutional definition of a "tax" that the parties diverge. Petitioner maintains that the realistic economic situation is that respondent, a governmental unit, has imposed a fee upon it as an association but that, by operation of Oregon statutes regarding condominium ownership, that fee must be paid by the individual unit owners. (Pet'r's Mem at 5-6.) Petitioner therefore concludes that the fee is a charge imposed by *Page 4 
respondent upon each unit owner as a direct consequence of ownership of that owner's condominium unit. (Id. at 6.)
Respondent argues that the fee, while concededly imposed by a governmental unit, is imposed not on any unit owner but rather on the corporate entity known as the association of unit owners. (Def's Resp at 5-6.) Respondent further observes that the imposition of the fee is not as a consequence of the ownership of any property by the association, but rather because petitioner engages in property management services. (Id.
at 6.) Respondent argues that if the association petitioner were to contract with a third party to perform the services it performs, which are conceded to be property management services within the meaning of the Ordinance, no fee would be imposed upon petitioner. (Id. at 6-7.) This distinction makes little difference to petitioner and the unit owners who are its members. Petitioner argues that whether the fee is paid by petitioner or a third party contractor hired by petitioner, the fee will ultimately be passed through to the unit owners in the form of assessments that must be paid by the unit owners. (Reply in Supp of Pet'r's Mot for Partial Summ J at 5.) In all events, argues petitioner, the fee is effectively imposed upon the unit owners, by reason of their ownership of property, and is therefore a "tax" subject to Measure 5. (Id.)
As an initial matter, the fee is not, in fact, imposed on any unit owner. The fee is only imposed upon persons who engage in property management services. (See Stip of Mat Facts, Ex 2 at 1-2.) The record shows that the only such person in this case who fits that description is the petitioner association. Further, if the fee was not paid when due, respondent would have no cause of action against any unit owner for collection and would have no lien against any unit, or any element of common property, to secure ultimate payment of the fee. *Page 5 
Nor, in fact, is any fee imposed by respondent upon the unit owners. That is not to say that there is not an ultimate economic burden attributable to the fee and borne by the unit owners. However, to the extent the unit owners have some ultimate responsibility for the economic burden of the fee, that is a consequence of the Condominium Act and the contractual relationships that the unit owners and petitioner have created. See ORS 100.475. That burden is not a direct consequence of the actions of respondent. Importantly, the constitutional text specifies that there must be a direct relationship between ownership of property and a liability for a charge made against that property. Or Const Art XI, § 11b(2)(b). The court is of the opinion that while the economic burden of the fee may fall on the unit owners, it does so only as an indirect consequence of the ownership of property. Between the unit owners and the economic burden of the fee lies not only the petitioner association, but also the contractual arrangements made or consented to by the unit owners and petitioner that govern when, and in what amounts, the burden of the fee, attributable to the liability of petitioner to pay the fee, will be shared among the unit owners.
Petitioner has attempted to "cut through" the foregoing analysis by arguing that the laws of the State of Oregon require the unit owners to pay the fee. (Pet'r's Mem at 6.) Petitioner sets that obligation directly next to the fee obligation created under the Ordinance and then draws a "direct line" and a "direct consequence" between unit ownership and the fee. (Id.) Petitioner's argument is not, however, supported by a close reading of the Condominium Act. ORS 100.475(1) provides for personal liability of a unit owner, but the liability exists only with respect to "assessments . . . by the association of unit owners." This is consistent with the definition of an "assessment" under ORS 100.005(1), which states that an "assessment" is "any *Page 6 
charge imposed or levied by the association of unit owners on or against a unit owner or unit," in accordance with the bylaws or declaration or the provisions of the Condominium Act. (Emphasis added.) However, nothing in the Condominium Act requires that any particular unit owner pay any particular charge or amount in respect of a liability incurred by the association of unit owners. The liability is created only by reason of actions and agreements of the declarant and the unit owners through the declaration and the bylaws applicable to the condominium. See also ORS100.530(1) (subject to the provisions of the declaration, common profits and expenses are allocated in accordance with interests in common elements).
The construction of Measure 5 that has thus far been applied by our Supreme Court is fully consistent with the foregoing analysis. InRoseburg School District v. City of Roseburg, 316 Or 374, 851 P2d 595
(1993) the Supreme Court was faced with a construction of the very same constitutional language from Measure 5 that is present in this case. Observing that the voters who passed Measure 5 by initiative intended to severely limit the power of governmental units in their taxing function, the court nonetheless observed that the voters had not intended to eliminate all methods of raising revenue. Id. at 378-81. In reviewing a storm drainage fee imposed on the occupant of property, the court noted that while some occupants would be the owners of property, not all owners were subject to the fee and therefore liability for payment of the fee was not a "direct consequence of ownership" of property. Id. at 381.Roseburg has been read by the Supreme Court and this court as distinguishing between fees and charges that are related to property or the ownership of property and those that are imposed on property or the owners of property as a direct consequence of the ownership of property.Knapp v. City of Jacksonville, 342 Or 268, 151 P3d 143 (2007); City ofPortland v. Atwood, 13 OTR 136 (1994). Atwood is of significance because it involved an earlier version of the Ordinance, but did not *Page 7 
involve the issues presented here regarding the effect, if any, of the condominium form of ownership. See 13 OTR 136.
Here, the court cannot conclude that the fee in question is imposed on the unit owners of units as a direct consequence of the ownership of property. Any economic burden borne by the owners is, at best, an indirect consequence of the ownership of a unit. Nor is it the case that all residential condominium owners have even an indirect responsibility for the fee by reason of being members of an association of unit owners. If units are separately metered or served by separate mains, the fee is not applicable to a residential unit. Additionally, an association of unit owners is not directly liable for the fee if it chooses to contract with a third party for the type of services, the performance of which attracts liability for the fee. As with the fees in Roseburg and Knapp, not all owners are responsible for payment of the fee and the fee is therefore not imposed as a direct consequence of ownership of property. SeeRoseburg, 316 Or at 381; Knapp, 342 Or at 275-76.
 V. CONCLUSION
The motion of petitioner for partial summary judgment is denied and the case will be continued for further proceedings as appropriate.
Now, therefore,
IT IS ORDERED that Petitioner's Motion for Partial Summary Judgment is denied. Costs to neither party.
Dated this ___ day of December, 2009.
THIS DOCUMENT WAS SIGNED BY JUDGE HENRY C. BREITHAUPT ON DECEMBER 9,2009, AND FILED THE SAME DAY. THIS IS A PUBLISHED DOCUMENT.
[1] All references to the Oregon Revised Statutes (ORS) are to the 2009 version.