I. INTRODUCTION
This matter is before the court on the Motion for Summary Judgment of Plaintiffs Charles C. Haynie and Sandra E. Haynie (taxpayers) and the Cross-Motion for Summary Judgment of Defendant Department of Revenue (the department). Defendant Hood River County Assessor (the county) filed an Answer but did not otherwise participate in the matter.
 II. FACTS
The following facts have been stipulated by the parties. Taxpayers, who are husband and wife, own real property identified in the county's records as property tax account number 3572. The property is a single-family dwelling that was built in 1936 in an Art Deco design unique to that time. In 1990 taxpayers applied for and obtained a historic property special assessment under Oregon's historic property preservation statute. Beginning in the 1991-92 tax year, the property was specially assessed as historic property for 15 years. From the 1997-98 tax year until the expiration of the historic special assessment, the county kept records of what the property's MAV would be were the property not in the historic special assessment program (Rollback MAV) in addition to keeping records of the amount of the property's MAV as specially assessed (MSAV) as required by statute.[1] *Page 492 
The special assessment ended June 30, 2006, at the expiration of the 15-year historic special assessment term and not because of any wrongdoing on the part of taxpayers. Taxpayers did not reapply for special assessment. For the following tax year, 2006-07, the county set the property's MAV at $498,335, an increase of $290,584 from the property's MSAV from the prior tax year. The county did not set the MAV at the Rollback MAV value, but calculated a new MAV using a changed property ratio (CPR) of 0.5460. The newly calculated MAV is greater than what the Rollback MAV would have been. The property's real market value (RMV) for the 2006-07 tax year was $912,704, and so the county set the property's assessed value (AV) at the lower MAV value of $498,335 (the product of $912,704 and 0.5460).
Taxpayers timely appealed to the Board of Property Tax Appeals. Their appeal was denied, and taxpayers appealed that decision to the Magistrate Division of this court. On July 9, 2007, the matter was specially designated for hearing in the Regular Division.
 III. ISSUE
What is the correct AV of the property for the 2006-07 tax year?
 IV. ANALYSIS
1, 2. Prior to the adoption of Article XI, section 11, of the Oregon Constitution (Measure 50), the basic, or default, position for determining the base for property taxation was RMV. Property that was exempt or subject to special assessment — that is, some other method of assessment based on a value other than RMV — could, of course, lose the benefit of exemption or special assessment. In such an event, the default rule of RMV supplied the base for taxation after exemption or special assessment ended. *Page 493 
3-5. Measure 50 was first effective for the 1997-98 tax year and set forth a new set of basic, or default, rules for property that was in existence and subject to taxation under the old RMV system as of July 1, 1995. Under Measure 50, such property was to have a MAV equal to 90 percent of its 1995 RMV, subject to limited increases of three percent per year. Such property was to have an AV base for taxation of the lesser of the MAV or RMV.
The census of property subject to the rule of Measure 50, was not, however, logically or factually complete for years after the effective date of Measure 50. For the "future" time period there would be, for example, newly constructed property. There would also be property that, as of July 1, 1995, was exempt, but after July 1, 1995, lost such exemption. There would also be property subject to special assessment as of July 1, 1995, that would cease to be qualified for special assessment sometime after July 1, 1995. In all such cases, property would be entering the new Measure 50 system belatedly and, very possibly, without there having been determined a meaningful July 1, 1995, RMV.[2] Without a 1995 RMV figure, an initial MAV figure (90 percent of 1995 RMV) could not be reliably derived.
6-8. The provisions of Measure 50 anticipate that problem. In section 1(c), Measure 50 provides that for new property, certain other property, and property "that becomes disqualified from exemption, partial exemption, or special assessment," for the first year of transition, [3]
 (1) the rule that MAV is equal to 90 percent of the 1995 RMV does not apply;
 (2) the rule limiting increases in MAV to, at most, three percent from the previous year rule does not apply; and *Page 494 
 (3) such property shall be valued at the ratio of average MAV to average RMV of property of the same class in the local area (the CPR).
Those provisions create a MAV for such property that, for the year of transition, is also the AV.[4] Measure 50 goes on to provide that, for years following the year of transition, the limitation on growth of MAV to three percent each year applies.
The legislature has implemented Measure 50 by statutes, the validity of which are not challenged by taxpayers. Nor does the court see any basis for concluding that, for purposes of this case, the statutory implementations, especially those in ORS308.146[5] and ORS 308.156, are not true to Measure 50.
9. The question becomes, then, how do the statutory rules apply to the property in question for the year of transition, remembering that it started its special assessment before Measure 50 and passed from special assessment to regular assessment after Measure 50 became effective? That question in turn becomes, for the reasons discussed below, a question of whether the property became disqualified from special assessment when the period of special assessment terminated by the passage of the statutory period of 15 years. The question comes to that because both Measure 50 and its implementing statutes provide that in the event of disqualification, the MAV and AV are to be the product of RMV and the CPR.
The department contends such disqualification occurred and that the AV and MAV for the first year of transition is to be determined by applying the CPR defined in ORS 308.156(5)(b) to the RMV of the property. The department takes as support for its position both the ordinary meaning of the word "disqualified" and the provisions of ORS 358.540, which, as amended in 2001, provide: "Property that has received special assessment under ORS 358.480 to 358.545 for 15 years, at the completion of the 15-year term, is *Page 495 disqualified from historic property special assessment." (Emphasis added.) On the basis of the plain meaning and statutory definition of "disqualified," the department concludes that ORS 308.156 must apply. The court agrees with the department's position as an initial matter, subject to a valid objection. Taxpayers raise a number of objections to the position of the department, which will now be addressed.
A. The "constitutional cap"
10, 11. Taxpayers first argue that Measure 50 contains a limitation generally prohibiting "any county taxing authority from increasing the assessed value of real property * * * by more than [three percent] from the prior year." (Emphasis added.) That is not the law. Measure 50 and the implementing statutes provide limitations on the increase in maximumassessed value, but not on assessed value.[6]
More importantly, the limits on growth of MAV are, by specific constitutional language, made inapplicable to the year in which property, through disqualification, passes from the realm of special assessment into the "regular" tax realm. The "constitutional cap" argument of taxpayers and variants asserting policy and equitable concerns are not persuasive.
B. The meaning of "disqualification"
12. ORS 358.540 sets forth the conditions under which a property becomes disqualified for special assessment. That statute provides as follows: "Property that has received special assessment under ORS 358.480 to 358.545 for 15 years, at the completion of the 15-year term, is disqualified from historic property special assessment." ORS 358.540(2). The property of taxpayers falls squarely within the above provision. It was classified as historic property, qualified for special assessment for 15 years, and, accordingly, was disqualified at the end of the 15-year term. That disqualification triggered the calculation MAV by use of the CPR, as required by ORS 308.156, which was properly done by the county.
Taxpayers assert that ORS 358.540 somehow does not apply to their situation, either because the term *Page 496 
"disqualification" only refers to the result of "bad" acts such as those found in ORS 358.515 or because ORS 358.499 (the Grandfather Clause) renders ORS 358.540 inoperable in their situation.
1. Plain language
13, 14. When "interpreting a statute, the court's task is to discern the intent of the legislature." PGE v. Bureau ofLabor and Industries, 317 Or 606, 610, 859 P2d 1143 (1993) (citations omitted). The "text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent." Id. Words of common usage are to be "given their plain, natural, and ordinary meaning." Id. at 611. The definition of "disqualify" is "to deprive of the qualities, properties, or conditions necessary for a purpose." Webster's Third New Int'lDictionary 655 (unabridged ed 2002). One of the "conditions" of historic special assessment is that it lasts only 15 years. To "become disqualified" means that the property no longer meets the conditions necessary for qualification under the statutes.
2. Context
15, 16. A statute's context also provides insight into legislative intent. PGE, 317 Or at 611. The context of the statute "includes other provisions of the same statute and other related statutes." Id. In addition, context includes the statutory framework against which the statute was enacted. Premier West Bank v. GSA Wholesale, LLC,196 Or App 640, 649, 103 P3d 1169 (2004).
17, 18. When Measure 50[7] and its implementing legislation were enacted, the historic special assessment scheme, as well as other special assessment programs, were in place. That is a fact of which the court may presume the voters and the legislature were aware. See Martin v. City of Tigard, 335 Or 444,451, 72 P3d 619 (2003) (holding that context includes "any relevant statutory framework in effect at the time when the voters adopted the provision") (citing FlavorlandFoods, 334 Or at 569-75); see also Premier WestBank, 196 Or App at 649 *Page 497 
(holding that the context of a statute includes "the preexisting common law and statutory framework within which the law was enacted") (internal citations omitted). As discussed above, provision was made in Measure 50 for property that could not yet be — either by reason of special assessment or some other reason — included in the Measure 50 realm beginning in 1997. Measure 50 and its implementing legislation specify that in such cases the CPR formula be used to calculate a property's MAV on entering into the Measure 50 realm.
19, 20. The context of the special assessment statutory scheme at the time of the adoption of Measure 50 supports the conclusion that disqualification can occur either because of "bad" acts or because of expiration of the statutory period. For example, ORS 358.525, the statute governing the imposition of additional taxes when property is removed from the historic special assessment program, stated in the years immediately before the passage of Measure 50:
 "[W]henever property which has received special assessment as historic property under ORS 358.505
thereafter becomes disqualified for such assessment as provided in ORS 358.515, there shall be added to the tax extended against the property * * * an amount equal to the difference between the taxes assessed against the property and the taxes that would otherwise have been assessed against the property * * *."
ORS 358.525 (1993) (emphasis added). If "disqualification" refers only to the affirmative acts listed in ORS 308.515, as taxpayers insist, then the legislature need not have included the phrase italicized above. The legislature is presumed to have not included extra language that does not add meaning to a statute. State v. Stamper, 197 Or App 413, 418,106 P3d 172, rev den, 339 Or 230 (2005). Accordingly, "disqualification" was understood to occur both because of "bad" acts and because of other causes, which clearly could be the expiration of the statutory period. Thus, although ORS 358.525
refers to a disqualification under ORS 358.515, that section itself refers to certain reporting responsibilities when,for any reason, "property ceases to qualify * * *." Other reasons could clearly include expiration of the special assessment time period. *Page 498 
3. Applicability of the Grandfather Clause
Taxpayers argue that ORS 358.540, the relevant portion of which — that specifying expiration of time as disqualification — was not passed until 2001, does not apply to their property by virtue of the Grandfather Clause. The Grandfather Clause provides as follows:
 "Property first classified and specially assessed as historic property for a tax year beginning on or before July 1, 1994, shall continue to be so classified, specially assessed and removed from special assessment as provided under ORS 358.480 to 358.545 as those sections were in existence and in effect on December 31, 1992."
ORS 358.499.
21, 22. Taxpayers argue that the phrase "remov[al] from special assessment" prevents the expiration of their property from being a disqualification within the meaning of Measure 50 and its implementing legislation because, within the 1991 statutes, disqualification is only used to refer to "bad" acts. Taxpayers are correct in that the Grandfather Clause addresses their property's status as historic property — that is, whether it is or is not in the program. That status is governed by the 1991 statutes.[8] The Grandfather Clause does not even purport to address, however, what occurs after the removal of property from special assessment. Most importantly, it does not speak to how the tax regime is to work after property is removed from special assessment.
23. If the court were to accept taxpayers' position that expiration is somehow not disqualification, the result would not be consistent with Measure 50 and its basic structure. Measure 50 contemplates only two classes or types of property — and thus two systems for determining a property's AV. The first class includes property that existed and was taxed in the regular manner at the time Measure 50 was enacted. The second class includes property that, on July 1, 1995, *Page 499 
either did not exist or was not taxed in the regular manner — such as new property or specially assessed property — but would need to have an AV established in the future.[9] Taxpayers here would have the court create a third class of property not covered or addressed by Measure 50. That class would include grandfathered property. For that property Measure 50 would supply no rule for the transition from special assessment to regular taxation. Nothing in the text of Measure 50 suggests that there are other classes of property for which no Measure 50 rules apply as stated. The argument of taxpayers based on the Grandfather Clause is not persuasive.
C. Fairness and policy concerns
24. Throughout their papers, taxpayers complain that the department's determination results in payment of more taxes than would have been paid had they not participated in the historic special assessment program, and they argue that fairness and policy concerns should prevent such a result. Even if that is so — a fact that is disputed by the department — the court is constrained to act within the scope of the applicable statutes. Taxpayers insist that to avoid this unjust result, the AV of the property should be the Rollback MAV, but they point to no constitutional provision or statute that allows or requires the court determine the MAV that taxpayers urge. *Page 500 
D. Equal protection clause
25. Finally, taxpayers allege that the department's position refuses the benefit of Measure 50's general three percent rule to owners of historic properties while allowing others its protection in violation of the Equal Protection Clause of theFourteenth Amendment to the United States Constitution.[10]
In making this argument, taxpayers assume that Measure 50 guarantees that a property's AV will not increase more than three percent in any given tax year, but that is not what the language of the Oregon Constitution and the Oregon Revised Statutes provides. It is possible for a property's AV to increase more than three percent in several situations, including when a property's special assessment ends.
26. In any event, classifications that are made for tax purposes need only have a rational basis. Knapp I v. City ofJacksonville, 18 OTR 22, 39 (2004), aff'd,342 Or 268, 151 P3d 143 (2007). "It has long been settled that legislative bodies are afforded great latitude in fashioning classifications for tax purposes where the classifications are not made upon the basis of suspect categories or fundamental rights." Id. at 39 (citing Huckaba v.Johnson, 281 Or 23, 25-26, 573 P2d 305 (1978) (citation omitted)). "[A] rational basis will be found to exist if there is `any conceivable state of facts' that would support the classification." Id. at 38 (quoting Huckaba,281 Or at 26 (citation omitted)). Contrary to taxpayers' assertions, such a conceivable state of facts exists in this case. The voters who passed Measure 50 and the legislature that passed the implementing legislation could have concluded that the value of all types of property that fell into exceptions to Measure 50 should be calculated in the same manner for ease of administration, or they could have concluded that calculating the value in the way taxpayers suggest would result in a perpetual special assessment that would not be feasible in the long term. The court concludes that the department's calculation of the property's MAV and AV does not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Page 501 
 V. CONCLUSION
When property has reached the end of its special assessment period after having been qualified and subject to special assessment pursuant to ORS 358.475 to 358.545, it is "disqualified" for purposes of Measure 50 and ORS 308.156(4)(a). Accordingly, the county properly set the property's MAV and AV at $498,335 under Measure 50. Now, therefore,
IT IS ORDERED that Plaintiffs' Motion for Summary Judgment is denied;
IT IS FURTHER ORDERED that Defendant's Cross-Motion for Summary Judgment is granted.
[1] Oregon Revised Statute (ORS) 358.525 (2005) requires the imposition of additional taxes when property is removed from special assessment under ORS 358.515 (2005), but those additional taxes cannot exceed the amount that "would have been due had special assessment not been in effect." Accordingly, the county must keep a record of the property's Rollback MAV.
[2] Meaningful because, even if property existed that was exempt or specially assessed, RMV would not have been a focus.
[3] No matter whether transitioning from nonexistent to existent, specially assessed to regularly assessed, or exempt to nonexempt, but in all events after July 1, 1995.
[4] Measure 50 also has an overriding rule that in no event can AV exceed RMV. Factually, that is not at issue in this case.
[5] All references to the Oregon Revised Statutes (ORS) are to 2005, unless otherwise indicated.
[6] Depending on a number of facts about any given property, MAV may usually become AV so that limits on MAV become limits on AV.
[7] An analysis similar to that provided by PGE is used when interpreting a constitutional provision. SeeFlavorland Foods v. Washington County Assessor,334 Or 562, 567-69, 54 P3d 582 (2002) (en banc).
[8] The legislative history of the Grandfather Clause indicates that its purpose was to prevent participants who were already in the program from having to reapply with a preservation plan, a requirement for classification that was implemented in the 1993 session. Revenue Impact Statement, SB 588, Apr 10, 1995.
[9] Section 1 of Measure 50 provides as follows:
 "(a) For the tax year beginning July 1, 1997, each unit of property in this state shall have a maximum assessed value for ad valorem property tax purposes that does not exceed the property's real market value for the tax year beginning July 1, 1995, reduced by 10 percent.
 "(b) For tax years beginning after July 1, 1997, the property's maximum assessed value shall not increase by more than three percent from the previous tax year.
 "(c) Notwithstanding paragraph (a) or (b) of this subsection, property shall be valued at the ratio of average maximum assessed value to average real market value of property located in the area in which the property is located that is within the same property class, if on or after July 1, 1995:
 "* * * *
 "(E) The property becomes disqualified from exemption, partial exemption or special assessment * * *[.]"
Or Const, Art XI, § 11(c).
[10] Taxpayers have not made a claim under Article I, section 20, of the Oregon Constitution. *Page 502