IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

NICHOLAS NARDI )
and ELIZABETH NARDI, )
                                   )
        Plaintiffs, )     TC-MD 190108N
                                     )
     v. )     **ORDER DENYING PLAINTIFFS'**
                                     )     **MOTION FOR SUMMARY**
MULTNOMAH COUNTY ASSESSOR, )     **JUDGMENT; GRANTING**
                                     )     **DEFENDANT'S MOTION FOR**
        Defendant. )     **SUMMARY JUDGMENT**

Plaintiffs filed their Complaint on April 8, 2019, appealing a Multnomah County Board

of Property Tax Appeals (BOPTA) Order concerning the value of property identified as Account

R298115 (the Garfield Property) for the 2018-19 tax year. Plaintiffs challenge the Garfield

Property's 2018-19 maximum assessed value (MAV), alleging that it should be approximately

$170,000 rather than $509,600.[1] (Compl at 6.) The parties submitted cross-motions for

summary judgment. Oral argument was held on November 5, 2019. Nicholas A. Nardi appeared

on behalf of Plaintiffs, and Carlos A. Rasch, Assistant County Attorney, appeared on behalf of

Defendant. All material facts were stipulated to by the parties.

I.       STATEMENT OF FACTS

In 2003, the Garfield Property qualified for a 15-year special assessment as a historic

property under "ORS 358.475 *et seq* (2003)." (Stip Facts at ¶ 3). "Pursuant to the historic

special assessment, the owners of the Garfield Property received a special tax assessment in

exchange for rehabilitating the Property." (*Id.* at ¶ 4.) The prior owners of the Garfield Property

---

[1] Defendant initially determined a MAV of $603,259, but it was reduced by the BOPTA. (*See* Compl at 2).

and Plaintiffs undertook rehabilitative work that cost in excess of $25,000, including restoring cement stairs, power-washing and repairing cement exteriors, replacing two cement columns, rebuilding the cement porch, painting wooden exteriors, and repairing the roof. (*Id.* at ¶¶ 5-6.) The special assessment term expired in 2018. (*Id.* at ¶ 8.) Prior to receiving special assessment, the Garfield Property's 2002-03 real market value (RMV) was $353,380; its MAV was $121,530; and its tax liability was $2,577. (Stip Facts at 2, ¶ 4). For the 2003-04 tax year, the first year of special assessment, the Garfield Property's RMV was $403,030; its MAV was $83,310; and its tax liability was $1,868. (*Id.* at ¶ 4.) In the years 2003 to 2018, Defendant did not increase the Garfield Property's MAV due to improvements to the property. (*Id.* at ¶ 7.) When the special assessment expired, Defendant determined the Garfield Property's 2018-19 RMV was $1,040,000; its MAV was $509,600; and its tax liability was $12,409. (*Id.* at ¶ 8.) "The tax savings realized by the owners of the Garfield Property were under $25,000 for the entire special assessment term." (*Id.* at ¶ 5.)

## II.     ANALYSIS

The issue before the court is whether the Garfield property's 2018-19 MAV must be recalculated under Article XI, section 11 of Oregon's Constitution following expiration of the historic property special assessment.

In all proceedings before this court, the party seeking affirmative relief shall bear the burden of proof by a preponderance of the evidence. ORS 305.427.[2] A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). The court shall grant summary judgment "if the pleadings, depositions, affidavits,

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2017, except where otherwise noted.

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
TC-MD 190108N

declarations, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." Tax Court Rule 47 C. "A party opposing summary judgment cannot rest upon the allegations of [its] pleadings[, but] must 'disclose the merits of [its] case or defense." *Eugene Television, Inc. v. Flinn,* 43 Or App 837, 841, 604 P2d 437 (1979).

A.     *Parties Arguments*

Plaintiffs argued that the "substantial increase in [MAV] is inconsistent with the limitations imposed by Article XI * * *." (Ptfs' Mot for Summ J at 3.) Plaintiffs identified three bases in opposition to the 2018-19 MAV adjustment. First, that the MAV calculation in subsection (c) was only intended to apply where property had not received a MAV in 1997 prior to special assessment.[3] (*Id.* at 8.) Second, that expiration of the special assessment under ORS 358.515 does not meet the definition of "disqualified" under section 11(1)(c).[4] (*Id*. at 15.) Third, that recalculating the MAV unfairly penalizes Plaintiffs for participating in the historic property special assessment program. (Ptfs' Resp at 2; Ptf's Reply at 2.)

Defendant argued that the plain text of section 11 provides that disqualification from special assessment is one of the events triggering a recalculation of MAV under subsection (c). Section 11(1)(c)(E) makes no exception for property that already had a MAV calculated prior to entering special assessment. Defendant further argued that ORS 356.515 and ORS 356.540 both state that property is disqualified from special assessment after the period of special assessment ends and that no different meaning can be inferred under section 11.

---

[3] "The legislature (and Oregon voters) never intended subsection (1)(c) to apply to property which was revalued in 1997 pursuant to subsections (1)(a) and (1)(b), and then later became specially assessed." (Ptf's Mot Summ J at 8.)

[4] Plaintiffs note that under the version of ORS 358.515 in effect when they entered the program, expiration of the special assessment period was not explicitly included as a disqualifying event. *See* ORS 358.515 (2003). However, ORS 358.540 (2003) provided that property "at the completion of the 15-year term, is disqualified * * *."

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
TC-MD 190108N

B.    *Measure 50, Generally*

Article XI, section 11 (section 11), of the Oregon Constitution, also known as Measure 50, was adopted by the voters in 1997.  *AKS LLC v. Dept. of Rev.*, __ OTR __ (Apr 18, 2019) (Slip Op at 16-17).  Before Measure 50 was adopted, property taxes were based on the property's RMV.  *Id*. at 16.  Measure 50 created the concept of MAV and provided that taxpayers shall be taxed the lesser of RMV or MAV.  *Id.*; *see also* Or Const, Art XI, § 11(1)(f).  MAV cannot increase more than three percent per year.  Or Const, Art XI, § 11(1)(b).  However, that three percent rule is subject to several exceptions, including property disqualified from special assessment.  Or Const Art XI, § 11(1)(c)(E).  If an exception applies, the property is "valued at the ratio of average [MAV] to average [RMV] of property located in the area in which the property is located that is within the same property class * * *."  Or Const, Art XI, § 11(1)(c).[5] This ratio is known as the "changed property ratio," or CPR.  *AKS LLC,* Slip Op at 18.  Thereafter, the property's MAV receives the benefit of the three percent rule.  Or Const, Art XI, § 11(1)(d).

C.    *Whether the MAV Exceptions in Section 11(1)(c) Only Apply to Properties That Did Not Receive a MAV in 1997*

Because Measure 50 was enacted by voter referendum, the court's role is "to discern the intent of the voters."  *Ellis v. Lorati*, 14 OTR 525, 529 (1999) (internal quotations omitted).  "The best evidence of the voters' intent is the text of the provision itself."  *Id.*  The court interprets constitutional provisions "within the same basic framework as * * * statutes: by

---

[5] ORS 308.156(4), (5) gives a more precise formula to determine MAV in the year following disqualification: MAV is the sum of the MAV allocable to any portion of the property not affected by the disqualification and the product of the RMV of the disqualified portion of the property multiplied by the "changed property ratio."

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
TC-MD 190108N

looking to the text, context, and legislative history of the amendment to determine the intent of the voters." *State v. Sagdal*, 356 Or 639, 642, 343 P3d 226 (2015).

1. *Text*

In a textual analysis, the court will read the words by their "plain, natural, and ordinary meaning." *State v. Langley*, 314 Or 247, 255-257, 839 P2d 692 (1992). The court is mindful of the enjoinder not to "insert what has been omitted, or to omit what has been inserted." *PGE. v. Bureau of Labor Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (citing ORS 174.10). Article XI, section 11, of the Oregon Constitution reads as follows:

> "(1)(a) For the tax year beginning July 1, 1997, each unit of property in this state shall have a maximum assessed value for ad valorem property tax purposes that does not exceed the property's real market value for the tax year beginning July 1, 1995, reduced by 10 percent.
>
> "(b) For tax years beginning after July 1, 1997, the property's maximum assessed value shall not increase by more than three percent from the previous tax year.
>
> "(c) Notwithstanding paragraph (a) or (b) of this subsection, property shall be valued at the ratio of average maximum assessed value to average real market value of property located in the area in which the property is located that is within the same property class, if on or after July 1, 1995:
>
> "* * * * *
>
> > "(E) The property becomes disqualified from exemption, partial exemption or special assessment[.]"

Use of the word "notwithstanding" informs the reader that the substantive rule of paragraph (c) is not the rule of paragraph (a) or (b). Or Const Art XI, § 11(1)(c). Subparagraph (c) lists specific events which, if occurring after July 1, 1995, create exceptions to the three percent rule; these include "property * * * disqualified from * * * special assessment." Or Const Art XI, § 11(1)(c)(E). Other events that trigger exceptions to subsection (a) and (b) include "new property or new improvements to property"; property that is partitioned or subdivided; omitted

property; and property subject to zoning changes or lot line adjustments. *See* Or Const Art XI, § 11(1)(c)(A-F).

Plaintiffs appear to concede that, on its face, the text of section 11 and its implementing statutes ORS 308.149 and ORS 308.156 require recalculation of MAV after disqualification from special assessment but maintain that the context and legislative history supports their reading that voters never intended "subsection (1)(c) to apply to property which was revalued in 1997 pursuant to subsections (1)(a) and (1)(b), and then later became specially assessed." (Ptf's Mot for Summ J at 8.)

    2.    *Context*

The next step of the inquiry is to examine the context. *Shilo Inn v. Multnomah County*, 333 Or 101, 116, 36 P 3d 954 (2001). Context includes prior case law interpreting the provision at issue. *Farmers Ins. Co. of Oregon v. Mowry,* 350 Or 686, 697, 261 P 3d 1 (2011) (Oregon's Supreme Court is the "ultimate interpreter of state constitutional provisions—subject only to constitutional amendment by the people * * *."). It also includes other parts of the provision at issue. *See* Hon. Jack L. Landau, *An Introduction to Oregon Constitutional Interpretation*, 55 Willamette L. Rev. 261, 270 (2019) ("The context of a constitutional provision always includes other parts of the one in dispute"). Accordingly, the text and interpretations of other subsection (c) exceptions may provide relevant context.

    a.    Prior case law concerning section 11(1)(c)(E)

Plaintiffs distinguished the facts presented in *Haynie* from their situation. (Ptfs' Mot Summ J at 9) (citing *Haynie v. Dept. of Rev.*, 19 OTR 488 (2008).) In that case, the taxpayers challenged the MAV calculation following removal of their property from historic property special assessment upon expiration of the 15-year term. *Haynie*, 19 OTR at 492. The taxpayers

entered the program in the 1991-92 tax year so their property did not have an existing MAV before it entered the program. *Id*. at 191. The taxpayers argued that "Measure 50 * * * prohibit[s] any county taxing authority from increasing the *assessed value* of real property by more than three percent from the prior year." *Id*. at 495 (italics in original; internal quotations omitted). In denying their appeal, the court noted that:

> "[The] provision was made in Measure 50 for property that could not yet be—either by reason of special assessment or some other reason—included in the Measure 50 realm beginning in 1997. Measure 50 and its implementing legislation specify that in such cases the CPR formula be used to calculate a property's MAV on entering into the Measure 50 realm."

*Id*. at 497. Although *Haynie* held that properties under special assessment at the time that Measure 50 was enacted are subject to calculation under section 11(c) upon disqualification, it would be inaccurate to read *Haynie* as holding that *only* properties in special assessment at the time Measure 50 was enacted are subject to the CPR formula under that subsection.

This court's body of case law reveals examples of MAV recalculations following loss of exemption under subsection (c)(E) to properties that would have had 1997 MAVs. *See e.g. Georgia-Pacific v. Clatsop County Assessor*, 20 OTR 138 (2010) (where property entered partial enterprise zone exemption in 2004, disqualification of property permitted MAV recalculation only of exempt portions of property tax account); *Living Enrichment Center v. Dept. of Rev.*, 19 OTR 324 (2007) (where taxpayer qualified for exemption starting in 1998, court noted that property "coming out of exempt status" is calculated using changed property ratio under section 11(1)(c)). There is nothing in the case law to support an unstated but implicit provision in section 11 prohibiting recalculation of the MAV under subsection (c) where the property already had a 1997 MAV.

/ / /

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
TC-MD 190108N

b.      Parallel exceptions under Section 11(1)(c)

The subsection (c)(F) exception for lot line adjustments expressly contemplates that the affected property already has a MAV.  Article XI, section 11(1)(c)(F) ("[T]he total assessed value of all property affected by a lot line adjustment shall not exceed the total maximum assessed value of the affected property under paragraph (a) or (b) of this subsection.").  This implies that the voters were aware, at the time Measure 50 passed, that the subsection (c) calculation would be applied to property that had a pre-existing 1997 MAV calculation.

Property that is subdivided or partitioned receives a recalculated MAV, notwithstanding the fact that it had an existing MAV.  *Fred Hodecker Inc v. Deschutes County Assessor*, TC-MD 070343B, 2008 WL 399418 (Or Tax M Div Feb 13, 2008) (property partitioned in 2005 was subject to MAV recalculation rules).  Similarly, in *Dish Network*, the court held that " 'new property or new improvements' is not limited to property that has been created or acquired within some designated period, but includes all property that is lawfully added by the assessor" to the assessment roll.  *Dish Network v. Dept. of Rev.,* 364 Or 254, 285, 434 P3d 379 (2019); *see also AKS* __OTR at___(slip op at 18) ("if [a subsection (c)] exception applies, the assessor must set a new MAV").  The case law interpreting the other subsection (c) exceptions also support the plain text reading of section 11(c).

3.      *Legislative History*

The weight given to legislative history depends on its "substance and probative quality." *Gaines*, 346 Or at 171.  "In some cases, statements of individual legislators and even nonlegislators may be entitled to some weight.  But the amount of weight will depend on the extent [they are] reflective of the intentions of the legislature as a whole."  *State v. Kelly*, 229 Or App 461, 467, 211 P3d 932 (2009).  Plaintiffs assert that the purpose of section 11(1)(c) is to

8

provide a method for assessing property that was not given a MAV for the 1997-98 tax year. (Ptfs' Mot Summ J at 7.) In support of their position, Plaintiffs included excerpts from a Senate Revenue Committee Work Session held March 10, 1997. (*See* Ptfs' Mot Summ J at 10.) For example, when asked about the historic property special assessment, in the context of Measure 50, James Scherzinger, Legislative Revenue Officer stated:

> "There would also be a calculation made as it goes along as to what the maximum assessed value is that would be determined based on the market value in 95-6, less 10%, plus whatever new construction is added, and that calculation would have to be carried with the property as and then at whatever time it comes off its 15 years, it would go up to that maximum assessed value."

(*Id*. at 11.) It is not clear in what context this discussion occurred or whether the changes proposed were ever adopted because Plaintiffs did not provide a bill number or other identifying information. Part of the discussion reflects the idea that all the value from rehabilitating the historic property would be added at the end of the special assessment period. (*See Id*. at 12-13.)[6] It is not clear how Plaintiffs' proposed MAV takes into account the additional value added from repairs and improvements made to the property during the special assessment term.

If the legislature did not intend section 11(1)(c) to apply in this situation it is relevant only to the extent it reflects the intent of the voters who passed Measure 50.[7] *See also Dish,* 364 Or 254, 260 n 7 (suggesting that an implementing statute enacted by the legislature may provide

---

[6] "(Rep. Rasmussen): The maximum assessed value is what it was at 95-96 less 10%? (James Scherzinger): Plus new construction and any other exception that would occur on the property." (*Id.* at 13.)

[7] The legislative history of a 2009 amendment to the historic property special assessment statutes (SB192 (2009)) reveals that the legislature was aware of the problem with Measure 50 raised by Plaintiffs; specifically, that some taxpayers coming out of historic property special assessment were receiving unfavorable tax treatment. The task force members testified that they knew the legislature had no power to amend Measure 50. They discussed a solution to ease the burden on taxpayers by allowing ongoing "indeterminate" historic property special assessment until a time that the changed property ratio was more favorable to taxpayers' tax bill. Audio, House Committee on Revenue, SB 192 (2009), June 19, 2009, 44:53, http://oregon.granicus.com/MediaPlayer.php?clip_id=4789. It appears the "Measure 50 fix" proposed by the task force never made it into the final version of the bill. *Compare* SB 192 (2009) Introduced, section 7a *with* SB 192 (2009) Enrolled.

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
TC-MD 190108N

context for understanding the text of a constitutional provision but that the "wording adopted by the voters controls[.]"). The court concludes that the legislative history that Plaintiffs provided is insufficient to overcome the text and context, which support Defendant's interpretation.

D.      *Whether Property Was "Disqualified" Within the Meaning of Article XI, Section 11*

Plaintiffs noted that under the version of ORS 358.515 in effect when they entered the program, expiration of the special assessment period was not explicitly included as a disqualifying event under ORS 358.515. *See* ORS 358.515 (2003). In *Haynie,* 19 OTR at 495-96, taxpayers made a similar argument, asserting that "'disqualification' only refers to the result of 'bad' acts such as those found in ORS 358.515 * * *." *See also former* ORS 358.515 (2003) (listing disqualifying acts resulting in assessment of back taxes and penalties under ORS 358.525). The court found that expiration of the special assessment period was a disqualification within in the meaning of section 11(c)(E).[8] *Id*. at 497.

After the court's decision in *Haynie*, the legislature amended ORS 358.515 to include expiration of the period of special assessment as a disqualifying event. Or Law 2005, ch 549, § 9. During a public hearing and work session, task force member Roger Roper testified that the language was added to clarify the existing law, which provided that expiration of the period was considered a disqualification "consistent with other special assessment statutes." Testimony, House Committee on Revenue, SB 192 (2009), June 19, 2009, 34:50, http://oregon.granicus.com/MediaPlayer.php?clip_id=4789.

---

[8] This decision was based, in part, on the fact that ORS 358.540(2) (2005) provided that "[p]roperty that has received special assessment under ORS 358.480 to 358.545 for 15 years, at completion of the 15-year term, is disqualified from historic property special assessment * * *." *Haynie*, 19 OTR at 495-96. The 2017 version of the statute retains the same language with respect to disqualification following the conclusion of the special assessment term, though it references a 10-year term rather than a 15-year term.

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
TC-MD 190108N

The legislative history indicates that the legislature did not intend to create a new basis for disqualification when they amended ORS 358.515, but rather to clarify the existing regime consistent with other special assessment statutes. The court finds nothing in the legislative history supporting a departure from the court's holding in *Haynie*. The court concludes that property disqualified from historic property special assessment by expiration of the period of special assessment is "disqualified" within the meaning of section 11(1)(c)(E).

E.      *Other Arguments —Fairness and Policy Concerns*

Plaintiffs' remaining arguments concern the unreasonableness of the outcome in this case noting that, in exchange for a "modest tax break" they undertook "substantial rehabilitation work, which cost significantly in excess of the tax break amount." (Ptfs' Mot Summ J at 2-3.) Plaintiffs' argument here amounts to a criticism of the underlying policy. It is not within the purview of the court to speculate on the wisdom of the legislature or the voters. *See Stonebridge Life Ins. v. Dept of Revenue*, 18 OTR 461, 466 (2006) ("In Oregon, it is the role of the legislature to craft laws, and it is the role of the courts to interpret them"); *see also Martinez v. Kulongoski,* 220 Or App 142, 185 P3d 498 (2008) (articulating standard to overturn court's constitutional precedent). The court's role is to interpret the law, not to rewrite it.

Plaintiffs assert that the combined effect of the historic property special assessment program and Measure 50 is to disincentivize the preservation and rehabilitation of historic properties. (Ptfs' Mot Summ J at 14.) The legislative was informed of this potential problem in 2009 but evidently declined to adopt the "fix" proposed by the task force that spent 18 months studying the historic property special assessment program.[9] It recognized that, due to market

---

[9] *See* Audio, House Committee on Revenue, SB 192 (2009), June 19, 2009, 44:53, http://oregon.granicus.com/MediaPlayer.php?clip_id=4789.

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
TC-MD 190108N

forces and use of the changed property ratio to calculate a new MAV at the end of the special assessment term, some taxpayers fare better and others fare worse. Here, Plaintiffs feel — perhaps not wrongly so — that they are in the group of taxpayers who have fared worse based on the when the Garfield Property was disqualified from special assessment.

> "The court recognizes that in one sense MAV is somewhat arbitrary or artificial. That is inherent in the overall scheme of section 11. The concept may, over time, result in various degrees of nonuniformity in the property tax system. Section 11(18) contemplates this and excuses itself from complying with other constitutional provisions requiring uniformity, specifically Article IX, section 1 and Article 1, section 32."

*Ellis*, 14 OTR at 535. The court recognizes that Plaintiffs have experienced some of the adverse effects of Measure 50. However, the court cannot change Oregon's constitution.

III.    CONCLUSION

After careful consideration, the court concludes that the Garfield Property was disqualified from special assessment within the meaning of Article XI, section 11(1)(c)(E) and Defendant properly recalculated its MAV under Article XI, section 11(1)(c), and ORS 308.156(4),(5). Now, therefore,

IT IS ORDERED that Plaintiffs' Motion for Summary Judgment is denied. Defendant's Motion for Summary Judgment is granted.

Dated this ___day of May 2020.

ALLISON R. BOOMER<br>
MAGISTRATE

**This is a <u>dispositive order</u> pursuant to Tax Court Rule – Magistrate Division 16 C(1). The court will issue a decision after waiting 14 days to determine whether there is a dispute about costs and disbursements. Any claim of error in regard to this order should be raised in an appeal of the Magistrate's decision when all issues have been resolved. See TCR-MD 19.**

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
TC-MD 190108N

*This document was signed by Magistrate Allison R. Boomer and entered on May 28, 2020.*

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
TC-MD 190108N