IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| DEER HILL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 190311G |
| | ) | |
| v. | ) | |
| | ) | **ORDER DENYING PLAINTIFF'S** |
| WASHINGTON COUNTY ASSESSOR, | ) | **MOTION FOR SUMMARY JUDGMENT** |
| | ) | **AND GRANTING DEFENDANT'S** |
| Defendant. | ) | **MOTION FOR SUMMARY JUDGMENT** |

On cross-motions for summary judgment, this case concerns a challenge to the constitutionality of applying Oregon Administrative Rule (OAR) 150-308-1500 to determine the subject property's additional tax after disqualification from special assessment. For the reasons given below, the court holds that Article XI, section 11(2) of the Oregon Constitution permits the application of OAR 150-308-1500 to the subject.

## I. STATEMENT OF FACTS

The subject is a five-acre parcel with a house, guest house, and outbuilding. (Stip Facts, ¶ 1.) For the 2019–20 tax year, 1.42 acres of the subject were disqualified from forestland special assessment. Defendant thereupon imposed an additional tax for the preceding five-year lookback period pursuant to ORS 308A.703 and OAR 150-308-1500.[1]

Plaintiff's principals, Paul and Gail Parker, bought the subject for $359,000 in May 1991.[2] (*Id.*, ¶ 2.) At that time—the 1990–91 tax year—a portion of the subject was specially assessed as forestland, and the whole subject was assigned a real market value and assessed

---

[1] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to 2017.

[2] The Parkers subsequently transferred the subject to their trust and then to Plaintiff; those transfers do not affect this dispute, and for convenience the Parkers will be referred to as the subject's owners.

value of $297,640 on the tax statement. (*Id.*) For tax year 1991–92, the subject's assessed value increased to $414,080. (*Id.*) That value was reduced to $359,000 for the 1992–93 tax year. (*Id.*, ¶ 3.)

Although the subject's tax statements for 1991–92 and 1992–93 were annotated "Acres 5.00, Small Woodlands – Potential Additional Tax Liability," they did not identify any particular value attributable to special assessment. (Stip Facts, ¶¶ 2–3.) The subject's 1995–96 tax statement was similarly annotated, and similarly lacked any statement of an amount at which the specially assessed portion was assessed. (*Id.*, ¶ 4.) In contrast, Defendant's 1995–96 appraisal card identified 3.0 acres of the subject as specially assessed at a total of $1,580. (*Id.*, ¶ 5.)

In 1996, the specially assessed portion of the subject was converted at the Parkers' request from 3.00 acres of Small Woodlands to 3.82 acres of Designated Forestland. (Stip Facts, ¶¶ 2, 9.)

Measure 50's provisions decoupling assessed value from market value first took effect on the 1997–98 tax roll. The subject's 1997–98 tax statement shows that the subject's assessed value was set at $413,370. (Stip Facts, ¶ 8.) With rounding, that amount is 90 percent of its 1995–96 assessed value, indicating that its initial maximum assessed value was set in accordance with Measure 50. (*Id.*)

In 2014–15, the subject's assessed value had risen to $684,240, with 3.82 acres of forestland specially assessed at $1,580. (Stip Facts, ¶¶ 10, 11.) The real market value of the 1.42 acres that would eventually be disqualified was $518,000. (*Id.*)

Upon disqualification of those 1.42 acres for 2019–20, Defendant imposed additional taxes for the preceding five-year lookback period, beginning with 2014–15. Defendant recalculated the 1.42 acres' 2014–15 maximum assessed value, raising its assessed value by

$386,370.  (Stip Facts, Ex 7 at 2.)  The subsequent years of the lookback saw similar assessed value increases, trended upward by three percent each year.  (*Id*.)

Plaintiff requests cancellation of the additional taxes, whereas Defendant requests that its assessment be upheld.

## II.  ANALYSIS

The principal legal question here is whether the application of OAR 150-308-1500 to calculate the subject's additional taxes violates Article XI, section 11(2) of the Oregon Constitution by resulting in an aggregate tax exceeding what "would have been imposed * * * had the property not been partially exempt or specially assessed for the years for which the additional taxes are being collected."

The court grants summary judgment where the documents on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law."  TCR 47 C; TCR–MD 13 B.[3]  There is no genuine issue as to a fact "if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment."  TCR 47 C.

A.      *Additional Tax under ORS 308A.703 and OAR 150-308-1500*

Disqualification of property from special assessment entails tax consequences.  One such consequence is the recalculation of maximum assessed value pursuant to ORS 308.146(3)(e).  *See also* Or Const Art XI, § 11(1)(c).  That recalculated maximum assessed value applies to the tax year associated with the first January 1 assessment date on which the property is

---

[3] The references are to the Tax Court Rules (TCR) and the Tax Court Rules–Magistrate Division (TCR–MD).

disqualified—the disqualification year. *See* ORS 308.156(4). Another consequence is the imposition of an additional tax by which a county recoups tax revenue lost due to special assessment in a "lookback period" of five or ten years preceding the disqualification. *See* ORS 308A.703.

ORS 308A.703(2) requires imposition of the additional tax when property is disqualified from special assessment:

> "The additional tax shall be equal to the difference between the taxes assessed against the land [while under special assessment] and the taxes that would otherwise have been assessed against the land, for each of the number of years determined under subsection (3) of this section."

For forestland, the lookback period determined under subsection (3) comprises up to five consecutive years before the disqualification in which the property qualified as designated forestland. ORS 308A.703(3)(d).

Instructions for computing additional tax are provided by OAR 150-308-1500(2):[4]

> "Effective August 15, 2018, to calculate the maximum assessed value (MAV) for the computation of the additional tax, multiply the real market value (RMV) of the special assessed land being disqualified for the earliest year in the lookback period by that year's appropriate change property ratio (CPR) for the classification of the disqualified property as if it would not have been specially assessed. For each subsequent year, calculate the MAV as if the property had not been specially assessed per ORS 308.146."

OAR 150-308-1500(2) thus requires computing additional tax using a recalculation of maximum assessed value for the earliest lookback year. That recalculation is in addition to the recalculation for the disqualification year required by ORS 308.146(3)(e).

---

[4] Before August 15, 2018, OAR 150-308-1500(2) had distinguished computation methods for tax years before and after Measure 5's limits on tax rates took effect and gave these instructions for the latter: "Additional taxes computed for 1991-92 tax year and thereafter equal the difference between the taxes assessed against the land in that year and the taxes that would have been assessed against the land had the land not been in farm use." *Former* OAR 150-308A.703(1)(a) (2000), *renumbered as* OAR 150-308-1500 (2016).

Plaintiff does not dispute that OAR 150-308-1500(2) is generally consistent with ORS 308A.703(2), but argues that its application to the subject violates Article XI, section 11(2) of the Oregon Constitution. Following the parties, the court will analyze the constitutional provision. Because the statute resembles the constitutional provision in looking to what tax would have been imposed during the lookback years, a similar analysis could apply to it.

B.      *Limit on Additional Tax under Oregon Constitution Article XI, Section 11(2)*

The additional tax on leaving special assessment is limited by Article XI, section 11(2) of the Oregon Constitution:

> "After disqualification from partial exemption or special assessment, any additional taxes authorized by law may be imposed, but in the aggregate may not exceed the amount that would have been imposed under this section had the property not been partially exempt or specially assessed for the years for which the additional taxes are being collected."

Or Const Art XI, § 11(2). Additional taxes may not exceed the taxes that "would have been" owed if the property had not been specially assessed for the pertinent years. Thus, computation of additional tax requires a hypothetical calculation of what the total aggregate taxes "would have been"; specifically, what they would have been if the property had not been specially assessed "for the years for which the additional taxes are being collected." Those latter are the years of the lookback period. *See* ORS 308A.703(5).

How much are the taxes that "would have been?" Both parties agree the amount is found by looking to a property's maximum assessed value over its lookback period. The parties further agree that, after the earliest lookback year, that maximum assessed value should increase according to the usual three-percent-per-annum rule absent some special event. Their disagreement lies in how to treat the earliest lookback year. Plaintiff would have that year's maximum assessed value equal 103 percent of the prior year, the year before the lookback

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

period.  Defendant would have the earliest lookback year's maximum assessed value recalculated, just as it must be recalculated for the disqualification year.

Briefing indicates that Plaintiff's proposed method of computing additional tax was once used in some counties, and a reference to something like that method is found in a footnote to *Haynie v. Department of Revenue*, 19 OTR 488, 491 (2008).  The county assessor in *Haynie* had kept records of a "Rollback MAV" for specially assessed historical property equal to "what the property's [maximum assessed value] would be were the property not in the historic special assessment program." *Haynie*, 19 OTR at 491.  In a footnote, the court stated that "the county must keep a record of the property's Rollback MAV" for purposes of computing additional tax under ORS 358.525. *Id*.  Further details are not provided, as additional tax was not at issue in that case.  However, one may suppose that a Rollback MAV might be set equal to a property's maximum assessed value at the outset of its special assessment, then adjusted each subsequent year as it would have been if the property were not specially assessed.  Upon disqualification, the difference between the tax computed using each lookback year's Rollback MAV and that already assessed using its specially assessed value would constitute its additional tax.

Plaintiff's position is that Article XI, section 11(2) forbids an additional tax greater than that computed using the above-described Rollback MAV method.

On a first reading, Plaintiff's position is appealing.  Article XI, section 11(2) limits aggregate taxes to what they would have been if the property had not been specially assessed. By relying on a maximum assessed value continued over from before the property was placed in special assessment, the Rollback MAV method yields a tax equal to the difference between what was actually paid and what would have been paid if the property had never been put in special assessment.

However, Plaintiff's reading of Article XI, section 11(2) neglects a key phrase. The constitutional limit is not what the taxes would have been if the property had never been specially assessed, but rather what the taxes would have been if the property had not been specially assessed "for the years for which the additional taxes are being collected." Or Const, Art XI, § 11(2). That last phrase is crucial because it restricts the time for which the property is considered as not having been specially assessed to the lookback period.

It makes a difference if only the lookback period is considered as out of special assessment in cases where the property was specially assessed the year preceding the lookback period. Where a property is in special assessment one year, but out of it the next, it has *ipso facto* "become[] disqualified from * * * special assessment" and must have its maximum assessed value recalculated. *See* ORS 308.146(3)(e). If the question is how much "would have been imposed" in taxes in the earliest lookback year, the answer must depend on whether that year "would have been" a disqualification year. If the property had been out of special assessment in the lookback period, but not in the year before, then its taxes for the earliest lookback year would have reflected the recalculation required by ORS 308.146(3)(e).

The recalculation required by OAR 150-308-1500(2) yields the taxes that would have been imposed if the property had been specially assessed immediately before the lookback period. The Rollback MAV method yields the taxes that would have been imposed if the property had not been specially assessed immediately before the lookback period—in that case, the earliest lookback year would not have been a disqualification year.

It might be objected that recalculating maximum assessed value both for the beginning of the lookback period and for the disqualification year violates another constitutional provision, Article XI, section 11(1)(d). That provision states:

> "Property shall be valued under paragraph (c) of this subsection only for the first tax year in which the changes described in paragraph (c) of this subsection are taken into account following the effective date of this section. For each tax year thereafter, the limits described in paragraph (b) of this subsection apply."

Or Const, Art XI, § 11(1)(d). The referenced paragraph (c) requires recalculation of maximum assessed value when there is an exception event, such as removal from special assessment. Article XI, section 11(1)(d) thus requires assessors to "only" recalculate maximum assessed value for exception years and to resume normal assessment thereafter. It forbids assessors from recalculating maximum assessed value for years in which no exception event occurred.

There is no conflict between Article XI, section 11(1)(d) and a lookback-period recalculation where the earliest lookback year would have been a disqualification year. Under that supposition, recalculation is precisely what section 11(1)(d) would require. Furthermore, the property is not "valued under" the lookback-year recalculation. That recalculation underlies the additional tax placed on "the next assessment and tax roll," ORS 308A.703(2), but it does not result in placing a new value on the roll for any year, past or present.

OAR 150-308-1500(2) is therefore constitutional as applied to a property that has been in special assessment longer than its lookback period.

Here, the disqualified portion of the subject had been in special assessment since at least 1996, over twenty years before being disqualified. Its lookback period was only five years. The amount it would have been taxed if it had been out of special assessment those five years is the amount it would have been taxed if its maximum assessed value had been recalculated at the beginning of those five years. *See* Or Const, Art XI, section 11(2); ORS 308.146(3)(e). Because that is the calculation required by OAR 150-308-1500(2), Defendant appropriately followed OAR 150-308-1500(2) in determining the subject's additional tax.

### III. CONCLUSION

Article XI, section 11(2) of the Oregon Constitution permits the application of OAR 150-308-1500(2) to calculate the subject's additional tax for year at issue. Now, therefore,

IT IS ORDERED that Plaintiff's motion for summary judgment is denied.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment is granted.

Dated this _____ day of January 2021.

_____
POUL F. LUNDGREN
MAGISTRATE

***This is a <u>dispositive order</u> pursuant to Tax Court Rule – Magistrate Division 16 C(1). The court will issue a decision after waiting 14 days to determine whether there is a dispute about costs and disbursements. Any claim of error in regard to this order should be raised in an appeal of the Magistrate's decision when all issues have been resolved. See TCR-MD 19.***

***This document was signed by Magistrate Poul F. Lundgren and entered on January 13, 2021.***